**PARK PLACE HOSPITAL, Dorris Jones and George Zuzukin, M.D., Petitioners,**

**v.**

**The ESTATE OF Lola MILO, Yannequa Graham, James Milo, Individually and as Parent and Legal Guardian of the Minor, Jamie Milo, Katherine Graham, a/n/f of Sholanda January, and Katherine Graham, Individually, Respondents.**

No. 94–1176.

Supreme Court of Texas.

Argued Sept. 7, 1995.

Decided Nov. 2, 1995.

Curry L. Cooksey, Beaumont, Joel Randal Sprott, Peggy R. Ban, Houston, for Petitioners.

K. Omari Fullerton, Houston, for Respondents.

SPECTOR, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and GONZALEZ, HIGHTOWER, HECHT, CORNYN, ENOCH, OWEN and BAKER, Justices, join.

In this wrongful death case, we consider whether the court of appeals erred in reversing and remanding a summary judgment granted in favor of a hospital, a doctor, and a nurse. Because the defendants' summary judgment evidence defeated causation as a matter of law, we hold that summary judgment was properly granted. Accordingly, we reverse the judgment of the court of appeals.

I.

On June 11, 1989, Lola Milo was admitted to Park Place Hospital in Port Arthur, Texas, for surgery to repair a hiatal hernia. The hernia operation was performed by Dr. Hassam Fadhli. During this operation, Dr. Fadhli inadvertently cut Milo's stomach, which required sutures to repair. After Milo was discharged from the hospital, she returned to the hospital's emergency room at least seven more times complaining of pain, breathing problems, and lack of bowel function. As a result of the complications from the hernia operation, Milo was readmitted to Park Place on July 15, 1989. It was determined that Milo's sutures had rotted, causing gangrene, and she was diagnosed as being in sepsis and resultant shock.

Dr. George Zuzukin became involved in Milo's care after she was in critical condition and on a respirator. According to Dr. Zuzukin's affidavit, breathing only with the assistance of a machine would not be beneficial to Milo in the long term, and he therefore attempted to wean her from the respirator on both July 30 and July 31. Each attempt was unsuccessful. Three days later, Dr. Zuzukin ordered the nurse in charge of Milo's care, Dorris Jones, to again attempt to wean Milo from the machine. After Nurse Jones carried out the doctor's orders, Milo went into

sudden cardiac and respiratory arrest. As a result, she suffered severe brain damage and lapsed into a coma from which she never emerged. Milo was transferred to St. Luke's Hospital in Houston, where she died some four months later. The death certificate lists the immediate cause of death as ischemic brain damage, and the underlying causes of death as respiratory and cardiac arrest, abdominal sepsis, and abdominal abscess.

## II.

Milo's husband, three minor children, and mother sued Park Place Hospital, Dr. Fadhli, Dr. Zuzukin, Nurse Jones, and two staff physicians—Dr. Cecil A. Walkes and Dr. Joseph N. Badlissi. Milo's survivors alleged causes of action against all the defendants under the Texas Wrongful Death Statute, TEX.CIV.PRAC. & REM.CODE §§ 71.002 & 71.004, the Texas Survival Statute, TEX.CIV. PRAC. & REM.CODE § 71.021, and general medical negligence. The plaintiffs subsequently nonsuited Dr. Fadhli, and the trial court entered an order dismissing him from the case. Dr. Badlissi was never served; Dr. Walkes was nonsuited, but no court order was entered dismissing him.

The hospital, Dr. Zuzukin, and Nurse Jones then moved for summary judgment. The trial court granted summary judgment on all claims for the hospital, Dr. Zuzukin, and Nurse Jones on September 10, 1993. Ten days after granting the summary judgment, the trial court severed all claims against these defendants from any claims against Dr. Badlissi and Dr. Walkes. The plaintiffs filed a motion for a new trial on October 11, 1993, and filed an appeal ninety-one days [1] after the trial court rendered its order of severance.

■ The defendants argue that the appellate timetable ran from the issuance of the summary judgment rather than from the signing of the severance order. *See* TEX. R.APP.P. 41(a). We disagree. All parties and all issues before the trial court must be disposed of before a summary judgment becomes final and appealable. *See Mafrige v. Ross,* 866 S.W.2d 590, 591 (Tex.1993). The

summary judgment in this case did not dispose of the claims against Walkes and Badlissi, and it contained no "Mother Hubbard" clause. Thus, it was not a final, appealable order. *See id.* at 590–91. Although the plaintiffs had filed notice to nonsuit Walkes, the appellate timetable could not be triggered until a signed, written order of the court dismissed him. *See Farmer v. Ben. E. Keith Co.,* 907 S.W.2d 495 (Tex.1995). Until the trial court rendered its severance order, the summary judgment for the hospital, Dr. Zuzukin, and Nurse Jones did not become final and appealable. *See Mafrige,* 866 S.W.2d at 591. Accordingly, the plaintiffs timely perfected their appeal.

## III.

■ The gravamen of the plaintiffs' medical malpractice claims against Dr. Zuzukin, Nurse Jones, and the hospital was that they improperly and prematurely attempted to wean Milo from the respirator, which in turn led to the cardiac and respiratory arrest that eventually caused Milo's death. The hospital, Dr. Zuzukin, and Nurse Jones moved for summary judgment; in order to prevail, they were required to prove that there was no genuine issue as to any material fact and that they were entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c). In reviewing a summary judgment, we must accept as true evidence favoring the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor. *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 549 (Tex.1985).

As support for their summary judgment motion, the defendants relied upon the deposition of Dr. Louis H. Roddy, a pulmonary specialist who was originally designated as an expert witness by the plaintiffs. Dr. Roddy was asked whether he could predict the chances of survival of someone in Milo's condition, suffering from sepsis and multisystem organ failure, even if she had been kept on the respirator. Dr. Roddy testified that a person in Milo's condition on the day Milo was taken off the respirator had only a forty

---

1. The 90th day following the severance order fell on a Sunday; therefore the appellate deadline was extended to the next day. *See* TEX.R.APP.P. 5(a).

percent chance of living even if she had remained on the respirator.

The plaintiffs submitted two affidavits, one from Dr. Boniface Gbalazeh and one from Nurse Silvia Tiller, which they claim raise a fact issue on causation. Dr. Gbalazeh's affidavit stated that the hospital and doctors ignored foreseeable postoperative complications which significantly reduced Milo's chance of survival. The affidavit of Nurse Tiller said that Milo had received substandard care, which, within reasonable medical probability, contributed to her demise. The defendants argue that the court of appeals erroneously considered these affidavits because they were not before the trial court when summary judgment was granted. However, we need not reach those arguments because neither affidavit controverted Dr. Roddy's testimony that Milo's chance of survival was less than fifty percent once she was placed on the respirator.

■ The defendants moved for summary judgment based on this Court's holding in *Kramer v. Lewisville Memorial Hospital,* 858 S.W.2d 397 (Tex.1993). In *Kramer,* we held that Texas does not recognize a common law cause of action for lost chance of survival in a medical malpractice case. *Id.* at 407. There is no liability for negligent medical treatment "that decreases a patient's chance of avoiding death or other medical conditions in cases where the adverse result probably would have occurred anyway." *Kramer,* 858 S.W.2d at 398.

■ In a medical malpractice case, plaintiffs are required to show evidence of a "reasonable medical probability" or "reasonable probability" that their injuries were proximately caused by the negligence of one or more defendants. *See, e.g., Kramer,* 858 S.W.2d at 400; *Duff v. Yelin,* 751 S.W.2d 175, 176 (Tex.1988). We have interpreted this requirement to mean that the ultimate standard of proof on the causation issue "is whether, by a preponderance of the evidence, the negligent act or omission is shown to be a substantial factor in bringing about the harm and without which the harm would not have occurred." *Kramer,* 858 S.W.2d at 400. Thus, recovery is barred when the defendants' negligence deprived the patient of only a fifty percent or less chance of survival. *Id.*

■ In reversing the summary judgment granted below, the court of appeals focused on the fact that Dr. Gbalazeh concluded that there were many deficiencies in treatment reflected in Milo's medical record, showing that she had received substandard care which, within reasonable medical probability, resulted in her death. However, the court of appeals' analysis overlooked the inquiry dictated by our holding in *Kramer.*

The dispositive issue as to the claims against the defendants is whether Milo could have survived if no effort had been made to remove her from the respirator. The only evidence on this issue was provided by Dr. Roddy, who testified that even before Nurse Jones and Dr. Zuzukin attempted to wean Milo from the respirator, she only had a forty percent chance of surviving her preexisting conditions. The testimony of Dr. Gbalazeh and Nurse Tiller does not controvert this evidence; instead, at most, it supports the idea that the attempt to wean Milo from the respirator reduced her already less-than-even chance of survival.

Because it is uncontroverted that Milo only had a forty percent chance of survival even before the attempt to wean her from the respirator, the defendants have shown that there was no genuine issue of material fact as to the cause of Milo's death. Therefore, plaintiffs' recovery is barred. Accordingly, we reverse the judgment of the court of appeals against the defendants because they have defeated causation as a matter of law.