COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

JACOB P. VIGIL, M.D.,                                      )

                                                                              )

Appellant,                          )           
No.  08-01-00092-CV

                                                                              )

v.                                                                           )                 Appeal from the

                                                                              )

SALVADOR MONTERO,
Individually and as      )               
34th District Court

Independent Administrator of
the Estate of              )

SARA MONTERO, Deceased, and
on Behalf       )           of El Paso County,
Texas

of all Statutory Wrongful
Death Beneficiaries           )

of SARA MONTERO, Deceased,                         )                 
(TC# 98-1293)

                                                                              )

Appellees.                          )

                                                                              )

 

O
P I N I O N

 








Appellant Jacob P.
Vigil, M.D. (ADr. Vigil@) appeals from the trial court=s judgment in favor of Appellees
Salvador Montero, Individually and as Independent Administrator of the Estate
of Sara Montero, Deceased, and on Behalf of All Statutory Wrongful Death
Beneficiaries of Sara Montero, Deceased. 
Dr. Vigil brings two issues:  (1)
the trial court erred in disregarding the jury=s
finding that Sara Montero had less than 50 percent chance of survival and
granting judgment notwithstanding the verdict for the Appellees; and (2) the
trial court erred in disregarding the jury=s
finding that Sara Montero was 60 percent contributorily negligent and granting judgment
notwithstanding the verdict for the Appellees. 
We reverse and remand.

SUMMARY
OF THE EVIDENCE

Sara Montero gave
birth to a girl on May 19, 1997.  On June
7, 1997, Sara and her sister Margarita Montero were shopping for baby
furniture, when Sara began to feel ill. 
Although she seemingly improved during the next two days, on June 10,
1997, Sara began to throw up, felt chest pains, and had shortness of
breath.  Thinking that Sara had eaten
something bad, Margarita suggested that Sara go see the family doctor in
Juarez, and one of their brothers, Salvador, drove Sara there.  

The Juarez doctor
was concerned about Sara=s
low blood pressure and suggested she should be hospitalized.  He also gave her an anti-nausea medication.  Sara and Salvador crossed back to
El Paso immediately, and while on the bridge, an ambulance was called to
take Sara directly to a hospital.  At
around 10:45 a.m., Sara arrived at the emergency room of Providence Memorial
Hospital and placed under Dr. Vigil=s
care.








Upon initial
examination, Sara was awake and able to talk but was still breathing hard,
unstable, and in shock, as indicated by a fast heart rate, extremely low blood
pressure, and very pale, sweaty, mottled skin. 
Dr. Vigil began to immediately try to stabilize her by administering
oxygen and fluids and also began considering three different diagnoses for Sara=s condition:  anaphylaxis (allergic reaction to a
medication), pulmonary embolus (blood clot), and massive hemorrhage.  The treatments for an allergic reaction
produced no improvement, and he found no signs of internal bleeding by 11:40
a.m.  The next diagnosis was pulmonary
embolism, and Dr. Vigil wanted to confirm the diagnosis before administering a
thrombolytic agent to Sara.  After
consulting a radiologist, Dr. Vigil ordered a CT scan to confirm the diagnosis
at 11:52 a.m., but Sara was not placed into the CT scan until 12:40 p.m., because
she was too unstable to be moved from the ER to the radiology department.  

At 1 p.m., as the
CT scan confirmed massive blood clots in Sara=s
pulmonary arteries, Sara coded (lost heart rate and blood pressure).  The emergency room team was able to revive
her, and TPA (thrombolytic agent) was administered.  Sara however coded again and was pronounced
dead at 2 p.m.

Dr. Herbert Fred
testified that with Sara=s
symptoms, her medical history, and wide-spread knowledge that pulmonary
embolism is a complication after childbirth, he would have made pulmonary
embolism the primary diagnosis from the beginning, and by the time X-rays had
been taken at 11:18 a.m., the diagnosis would be confirmed in his mind.  In his opinion of the standard of care, a
final confirmatory diagnosis would have been unnecessary before administering
the TPA, and he thought the drug could have been administered within the first
33 to 50 minutes of being in the hospital. 
Dr. Joseph Varon also agreed that pulmonary embolism should have been
diagnosed and TPA given within the first ten minutes of Sara=s arrival at the emergency room.

Dr. Sergio Alvarez
disagreed with both Dr. Fred and Dr. Varon that TPA could have been given
without a final confirmatory test, and this opinion was upheld by Dr. Samuel
Keim.  Summarizing a medical study, Dr.
Keim also pointed out that in 1997, only 38 percent of both massive and smaller
pulmonary embolism patients survived regardless of the therapy given.

PROCEDURAL
HISTORY








During trial, the
trial court inquired whether case law supported the submission of chance of
survival as a jury question or instruction. 
At that point, parties realized Dr. Vigil had not pleaded the
affirmative defense of contributory negligence or alleged Sara had less than 50
percent chance of survival in his answer. 
Appellees objected to the amendment of the pleadings and to Dr. Vigil=s allegation that they had tried the
issue of contributory negligence by consent. 
Dr. Vigil again brought up the motion before submission to the jury but
the trial court deferred the ruling. 
After both sides had rested and closed, Appellees again objected to the
inclusion of the questions on Sara=s
negligence and chance of survival in the jury charge.  The trial court denied the request.

The jury returned
the following verdict:

Question No. 1

Did the negligence, if
any, of those named below proximately cause the death of Sara Montero?  

 

Answer >Yes=
or >No=
for each of the following:

 

a.         Sara Montero                                       YES

b.         Jacob Vigil, M.D.                                 YES

c.         Providence Memorial Hospital              NO

 

                                                              .               .               .

 

Question No. 2

 

The percentage you
find must total 100 percent (100%).  The
percentages must be expressed in whole numbers. 
The negligence attributable to a person named below is not necessarily
measured by the number of acts or omissions found.

 

What percentage of the
negligence that caused the occurrence do you find attributable to each of those
found by you, in your answer to Question 1, to have been negligent?

 

a.         Sara Montero                                       60%

b.         Jacob P. Vigil, M.D.                             40%

c.         Providence Memorial Hospital              0

 

TOTAL            100%








Question No. 3

 

Do you find from a
preponderance of the evidence that a pre-existing illnesses at the time Sara
Montero arrived at the Emergency Room of Providence Memorial Hospital on June
10, 1997, made her chance of survival 50% or less?

 

Answer
>Yes=
or >No=
:                         YES

 

The parties then
filed post-trial motions, and the trial court: 
(1) granted Appellees=
motion to disregard jury questions 1a, 2, and 3; and (2) denied Dr. Vigil=s request to amend his pleadings to add
the issue of contributory negligence but granted the request to add the
allegation that Sara had less than 50 percent rate of survival before arriving
at the emergency room.  A judgment was
entered for Appellees to recover a total of $472,807.15 in actual damages.

DISCUSSION

The standard of
review for the entry of a Judgment Notwithstanding the Verdict is essentially a
Ano evidence@
standard, i.e., it is only proper if there is no evidence from which the jury
could have made its findings.  Leon
Ltd. v. Albuquerque Commons P=ship,
862 S.W.2d 693, 699 (Tex.App.‑‑El Paso 1993, no writ); Baker v.
Int=l Record
Syndicate, Inc., 812 S.W.2d 53, 56 (Tex.App.‑‑Dallas 1991, no
writ).  The evidence must be reviewed in
the light most favorable to the jury finding, considering only the evidence and
inferences that support the jury finding. 
Leon Ltd., 862 S.W.2d at 699. 
If there is more than a scintilla of competent evidence to support the
jury=s
finding, the judgment notwithstanding the verdict should be reversed.  Id.








To recover under
the Texas Wrongful Death statute, a plaintiff in a medical malpractice case
must show that the injuries complained of were proximately caused by the
negligence of the defendants by evidence of Areasonable
medical probability@ or Areasonable probability.@ 
Park Place Hosp. v. Estate of Milo, 909 S.W.2d 508, 511 (Tex.
1995).  The standard of proof is,
therefore, whether by a preponderance of evidence the negligent act or omission
is shown to be a substantial factor in bringing about the harm and without
which the harm would not have occurred.  Park
Place Hosp., 909 S.W.2d at 511, quoting Kramer v. Lewisville Mem=l Hosp., 858 S.W.2d 397, 400 (Tex.
1993).  Recovery is barred when the
defendants=
negligence deprived the patient of only a fifty percent or less chance of
survival.  Id.

The jury in this
case found that Sara had less than 50 percent chance of survival before
arriving at the emergency room of Providence Memorial Hospital.  As noted above, if there was more than a
scintilla of competent evidence to uphold the jury=s
finding, then the Appellees could not have recovered and we must reverse the
trial court=s JNOV.

While not specific
to Sara=s case,
the testimony of Dr. Keim on the 1997 study suggesting that only 38 percent of
both massive and smaller pulmonary embolism patients survived regardless of
therapy given has sufficient attributes of competent evidence which would
support the jury=s
finding.  Obviously, the jury=s finding rests on the opinion and
inferences from Dr. Keim=s
testimony, and we cannot say that the opinion or inference does not form a
reasonable basis for the finding.  Navarette
v. Temple Indep. Sch. Dist., 706 S.W.2d 308, 309-10 (Tex. 1986).  

Normally, because
there is some evidence supporting the disregarded jury finding, we would
reverse and render a judgment.  However,
in the interests of justice, we feel that compound errors in the case
necessitate a new trial.[1]








The judgment of
the trial court is reversed, and the case remanded for a new trial.

 

 

 

August
29, 2002

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
At trial, the issue of chance of survival of a patient seems to have been
treated like an affirmative defense rather than a part of proximate cause for
medical malpractice.  See Park Place
Hosp., 909 S.W.2d at 511.  We feel
this error generated a series of errors in the jury charge and in the judgment.