Opinion issued March 2, 2006
 



     







In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00760-CV
____________

DIANA CASTILLO, Appellant

V.

 OLGA FLORES, Appellee




On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2004-26205




MEMORANDUM OPINION
          Appellant, Diana Castillo, appeals an interlocutory order denying, in part, her
summary judgment motion based on official immunity. See Tex. Civ. Prac. & Rem.
Code Ann. § 51.014(5) (Vernon Supp. 2005). We determine whether Castillo carried
her burden of proving her affirmative defense of official immunity as a matter of law
and, if so, whether appellee, Olga Flores, then raised a material fact issue on that
affirmative defense. We reverse that portion of the trial court’s order denying
summary judgment on the basis of official immunity on part of Flores’s claim against
Castillo for defamation, we affirm that portion of the order denying summary
judgment on the remainder of Flores’s claim against Castillo for defamation and on
Flores’s claim against Castillo for intentional infliction of emotional distress
(“IIED”), and we remand the cause with instructions.
Standard of Review and Summary Judgment Burden
          The propriety of a summary-judgment ruling is a question of law, and we thus
review that ruling de novo. Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d
211, 215 (Tex. 2003). In reviewing a summary judgment, evidence favorable to the
non-movant is taken as true, and all reasonable inferences are indulged in the non-movant’s favor. Johnson Co. Sheriff’s Posse, Inc. v. Endsley, 926 S.W.2d 284, 285
(Tex. 1996). 
          The movant for traditional summary judgment has the burden of showing that
there is no genuine issue of material fact and that she is entitled to judgment as a
matter of law. Tex. R. Civ. P. 166a(c); Park Place Hosp. v. Estate of Milo, 909
S.W.2d 508, 510 (Tex. 1995); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548
(Tex. 1985). A defendant moving for traditional summary judgment must either
disprove at least one element of each of the plaintiff’s causes of action or plead and
conclusively establish each essential element of her affirmative defense, thereby
rebutting the plaintiff’s causes of action. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995). When the defendant has carried its summary-judgment burden, the burden
shifts to the non-movant to raise a material fact issue precluding summary judgment. 
Virginia Indonesia Co. v. Harris County Appraisal Dist., 910 S.W.2d 905, 907 (Tex.
1995).
Background
          Flores was the Dean of Student Development at Houston Community College’s
(“HCC”) Southeast College. Until April 1998, Castillo was Dean of Students at
HCC’s Central College. From May 1998 until December 2002, she was College
Operations Officer (“COO”) at HCC’s Southeast College. In January 2003, Castillo
became the interim president at Southeast College. While interim president, Castillo
was Flores’s direct supervisor. The events underlying this litigation occurred while
Castillo was COO and interim president of Southeast College. In a nutshell, Flores
alleged that, just prior to and after Castillo’s becoming interim president, Castillo had
defamed her, harassed her, unfairly discredited and criticized her, interfered with her
management, threatened her with adverse actions, attacked her work and reputation,
and generally made working at HCC harsh and unbearable because Castillo wanted
a presidency position for herself, to the exclusion of Flores, and because Castillo was
retaliating against Flores for various reasons. Castillo disputed both the occurrence
of most of the alleged actions and the motivation that was alleged to have been
behind them.
          In her final petition, Flores pleaded the following claims against Castillo in her
individual capacity: (1) defamation, (2) IIED, and (3) “tortious interference with
beneficial relations.”


 Based on Flores’s petition, as clarified by her summary-judgment response, Flores’s defamation cause of action arose from the following
seven communications, each of which, when viewed in the required light, criticized
Flores:
●An e-mail (“the Castillo E-Mail”), dated October 15, 2002, from
Castillo to HCC Trustee Yolanda Navarro Flores (“HCC Trustee
Yolanda Flores”).



 
●A letter (“the Castillo Letter”), dated March 1, 2003 and authored
by Castillo, which followed up on a previous discussion with
HCC Trustee Herlinda Garcia.
 
●An anonymous faculty petition (“the Anonymous Faculty
Petition”), dated August 4, 2003, requesting that the Health
Sciences Student Services department be returned to the 
leadership of the Dean of Health Sciences.
 
●Four anonymous letters (“the Anonymous Letters”), each
criticizing Flores and her actions or management.

Flores’s claim for IIED was based on the seven communications summarized above
and on other acts that allegedly subjected Flores to contempt and ridicule and that
constituted “acts of insult, interference and harassment.”
          Castillo moved for traditional and no-evidence summary judgment, asserting 
the affirmative defense of official immunity to the three causes of action


 and also
asserting attacks on the merits of all claims. See Tex. R. Civ. P. 166a(c), (i). Flores
responded. After an oral hearing, the trial court granted Castillo’s summary-judgment
motion on Flores’s claim for “tortious interference with beneficial relations,” but
denied the motion with respect to Flores’s claims for defamation and IIED.
Official Immunity
          In her sole issue, Castillo argues that the trial court erred in denying her
summary-judgment motion on the basis of official immunity. Because the trial
court’s order left standing Flores’s claims for defamation and IIED, and the parties’
official-immunity evidence differed to some extent for the two causes of action, we
separately consider the propriety of the order on each cause of action.
A.      The Law
          Official immunity is an affirmative defense. Telthorster v. Tennell, 92 S.W.3d
457, 460 (Tex. 2002). Official immunity immunizes a public official from liability
when her complained-of actions were (1) performed within the scope of her authority,
(2) discretionary duties, and (3) performed in objective good faith. Joe v. Two Thirty
Nine Joint Venture, 145 S.W.3d 150, 161-62 (Tex. 2004). In the summary-judgment
context, a defendant asserting official immunity must conclusively establish all three
elements. Telthorster, 92 S.W.3d at 461. Only if the proponent conclusively proves
all three elements does the summary-judgment burden shift to the non-movant to raise
a fact issue. See Virginia Indonesia Co., 910 S.W.2d at 907; see also Telthorster, 92
S.W.3d at 465 (holding same in context of good-faith element of official-immunity
affirmative defense).
          1.       Scope of Authority
          “[P]ublic officials act within the scope of their authority if they are discharging
the duties generally assigned to them.” Ballantyne v. Champion Builders, Inc., 144
S.W.3d 417, 424 (Tex. 2004). “The fact that a specific act that forms the basis of the
suit may have been wrongly or negligently performed does not take it outside of the
scope of authority.” Koerselman v. Rhynard, 875 S.W.2d 347, 350 (Tex.
App.—Corpus Christi 1994, no writ).
          2.       Discretionary Duty
          “Ministerial acts are those for which ‘the law prescribes and defines the duty
to be performed with such precision and certainty as to leave nothing to the exercise
of discretion or judgment.’” Ballantyne, 144 S.W.3d at 425 (quoting Comm’r of the
Gen. Land Office v. Smith, 5 Tex. 471, 479 (1849)). “If the public official must obey
an order, without having any choice in complying, the act is ministerial.” Id. In
contrast, however, “[i]f an action involves personal deliberation, decision, and
judgment, . . . it is discretionary.” Id.
          3.       Good Faith
          “To determine whether a public official has acted in good faith, we use an
objective standard, asking whether a reasonably prudent official, under the same or
similar circumstances, could have believed that his conduct was justified based on the
information he possessed when the conduct occurred.” Joe, 145 S.W.3d at 164. 
Accordingly, “[t]he standard of good faith as an element of official immunity is not
a test of carelessness or negligence,” is not “a measure of an official’s motivation,”
and does not require that the proponent “prove that it would have been unreasonable
not to engage in the conduct, or that all reasonably prudent [officials] would have
engaged in the same conduct.” Ballantyne, 144 S.W.3d at 426; Telthorster, 92
S.W.3d at 465. Neither does the good-faith test “inquire into ‘what a reasonable
person would have done,’ but into ‘what a reasonable [person] could have believed.’” 
Ballantyne, 144 S.W.3d at 426 (quoting Telthorster, 92 S.W.3d at 465) (emphasis in
Telthorster). Therefore, “[w]hen a public official considers two courses of action that
could reasonably be believed to be justified, and selects one, he satisfies the good
faith prong of official immunity as a matter of law.” Id. 
          If the public official carries her summary-judgment burden of conclusively
establishing good faith, the plaintiff, in order to raise a material fact issue, must
produce evidence that no reasonable official in the defendant’s position could have
believed that the facts were such that they justified her conduct. Telthorster, 92
S.W.3d at 465.
B.      Defamation
          Castillo first argues that the trial court improperly rejected her official-immunity affirmative defense with respect to Flores’s defamation claim. As Castillo
did below in her summary-judgment motion, we divide our discussion into two parts:
(1) one considering the defamation claim based on the Castillo Letter and the Castillo
E-Mail, both of which Castillo admitted authoring, and (2) the other considering the
defamation claim based on the four Anonymous Letters and the Anonymous Faculty
Petition, which Castillo denied authoring.
          1.       The Castillo Letter and the Castillo E-Mail
          The Castillo E-Mail was sent to HCC Trustee Yolanda Flores and said, among
other things, that Flores “is not ready for a Presidency. . . . [S]he may have
credentials, but she is scattered to the winds. Central [College] is huge and complex. 
She cannot do this.” The Castillo Letter followed up on a conversation with HCC
Trustee Garcia and said, among other things, that Flores “did not work out at [HCC’s]
Central [College]”; that the former HCC president had been ready to release Flores
for not having met her primary responsibilities at HCC’s Central College; that Flores
would “probably fail at [HCC’s Southwest College] because the team out there is not
going to tolerate her antics; that Flores was “having problems with” five African
American Southeast College employees; that Flores made a bad hiring decision; that
“the blacks all know that [Flores] gave this . . . job to [the job recipient] because of
the LULAC connections”; and that Flores had “burned her bridges with everyone”
and that “no one trusts her.”
                    a.       Scope of Authority
          Castillo produced the following summary-judgment evidence relevant to the
scope of her authority. From 1991 until April 1998, Castillo was Dean of Students
at HCC’s Central College. From May 1998 until December 2002, she was COO at
HCC’s Southeast College. As COO, Castillo’s duties included, among other things,
the oversight of all personnel matters. In December 2002, Castillo accepted the
interim presidency at Southeast College, and she transitioned into the position in
January 2003. As interim president, Castillo was “the top administrator and the
ultimate decision maker at the college level regarding personnel,” and she handled
all human-relations matters, position-control matters, hirings, and terminations for
two other HCC campuses. Castillo was Flores’s supervisor during her interim
presidency.
          Castillo’s evidence showed that she sent the Castillo E-Mail to HCC Trustee
Yolanda Flores in response “to inquiries of me related to the subject of [employment]
opportunities for Hispanics,” which was a subject in which Castillo and HCC Trustee
Yolanda Flores had discovered that they had a common interest. Castillo’s evidence
also showed that she drafted the Castillo Letter “in response to some inquiries [HCC
Trustee Garcia] made of me during a meeting concerning situations that were arising
at Southeast College . . . .” Castillo also averred that the matters that she discussed
in the Castillo Letter—specifically, the possibility of Flores’s transfer, Flores’s
treatment of African Americans, Flores’s not “work[ing] out at Central
[College]”—were in response to prior questions or statements from, or prior
discussions with, HCC Trustee Garcia. 
          Taken together, the above evidence showed that, when Castillo drafted these
two documents, she was “discharging the duties generally assigned to [her],” that is,
acting within the scope of her authority as COO, which gave her oversight of all
personnel matters, and as interim president, which made her the ultimate decision-maker at Southeast College on personnel matters. See Ballantyne, 144 S.W.3d at 424.
 
          In response, Flores first asserts that Castillo admits in her brief that the
“summary judgment evidence on this element is controverted.” Castillo’s brief did
not admit this: instead, Castillo’s briefing merely noted what Flores’s summary-judgment arguments below had been. In fact, we have found no controverting
summary-judgment evidence on the scope-of-authority element. 
          Flores next contends that Castillo could not have carried her burden on this
element because Castillo’s affidavit “admits that ‘no law or [HCC] policy required’
her to make the communications” and because Castillo did not “provide any summary
judgment evidence demonstrating the hierarchical relationship between herself and
the individual trustee.” First, Castillo did not aver that no HCC policy or law
required her to make the communications, but instead averred that no HCC policy or
law dictated how she should respond to trustees’ inquiries. Second, although Castillo
did not produce evidence of the hierarchical relationship between herself and the
HCC trustees, she did produce uncontroverted evidence that, as COO, she had
oversight of all personnel matters at HCC, and as interim president, she was the
ultimate decision-maker on personnel matters. The statements in the Castillo E-Mail
and the Castillo Letter concerned personnel matters; the statements were thus made
in the scope of Castillo’s duties as COO and interim president. 
          Flores focuses incorrectly on whether Castillo had authority to respond to HCC
trustees’ personnel inquiries; the proper focus, however, is on the “duties generally
assigned” to Castillo


—here, her oversight of personnel matters. Cf. City of Hidalgo
v. Prado, 996 S.W.2d 364, 368, 372 (Tex. App.—Corpus Christi 1999, no pet.)
(holding that police chief acted within scope of authority, for official-immunity
purposes, when committing acts alleged to have amounted to IIED and wrongful
termination because chief’s actions “related to personnel actions” and because
“[h]iring, firing, and reprimanding police officers is generally within the scope of the
authority of the police chief”); Moulton v. Vaughn, 982 S.W.2d 107, 110-11 (Tex.
App.—Houston [1st Dist.] 1998, pet. denied) (holding that university-employee
defendant—whose duties include recruiting employees and making personnel
recommendations to university board—acted within scope of duties when he ordered
plaintiff to undergo required psychological testing for university job, obtained testing
results, and divulged that information to university entity to which plaintiff had not
consented divulging his confidential information).
          Rule 166a allows a summary-judgment motion to be based on the
“uncontroverted testimonial evidence of an interested witness, . . . if the evidence is
clear, positive and direct, otherwise credible and free from contradictions and
inconsistencies, and could have been readily controverted.” Tex. R. Civ. P. 166a(c). 
Castillo’s scope-of-authority evidence meets that test by, for example, not having
been controverted by Flores’s evidence and by being subject to being confirmed or
controverted through examining HCC’s policies, deposing Castillo’s superiors, or the
like. 
          We hold that Castillo conclusively proved the scope-of-authority element with
respect to the Castillo E-Mail and the Castillo Letter.
                    b.       Discretionary Duty
          Castillo averred that 
[t]he actions I took in responding to the inquiries of Trustees [sic]
Navarro Flores and Trustee Garcia, and my various supervisory
decisions, involved my judgment and discretion. There were no [HCC]
policies that precisely dictated how I should respond to Trustees’
inquiries, nor were there any policies that dictated how I should
supervise my subordinates. These decisions were left to my judgment.

Castillo also produced evidence that the Castillo E-Mail and Castillo Letter were
responses to trustees’ inquiries on personnel-related matters. In addition, Castillo
produced evidence that (1) when the Castillo E-Mail was written, she was COO of
Southeast College and had oversight of all personnel matters and (2) when the
Castillo Letter was written, she was “the top administrator and the ultimate decision
maker at the college level regarding personnel.” As with the scope-of-authority
official-immunity element, the proper focus is on whether the allegedly defamatory
statements were made pursuant to Castillo’s discretionary duties as the head of
personnel matters, not on whether she had discretion to make defamatory statements
while discharging those personnel-management duties. See Dear v. City of Irving,
902 S.W.2d 731, 738 (Tex. App.—Austin 1995, writ denied).
          The above evidence carried Castillo’s summary-judgment burden to establish
the discretionary-duty element conclusively. See Cantwell v. Tex. Dep’t of Transp.,
No. 08-00-00229-CV, 2001 WL 258622, at *4 (Tex. App.—El Paso Mar. 15, 2001,
no pet.) (not designated for publication) (holding that plaintiff’s immediate
supervisor, among others, had carried summary-judgment burden of proving that his
terminating plaintiff was discretionary duty because affidavit showed that he “had
discretion in personnel matters, including reviewing, evaluating, and making
decisions such as whether to terminate an employee”); see also Titus Reg’l Med. Ctr.
v. Tretta, 180 S.W.3d 271, 275 (Tex. App.—Texarkana 2005, no pet. h.) (“Executives
and supervisors of State entities have uniquely discretionary authority.”); Gustafson
v. Dodds, No. 03-00-00644-CV, 2001 WL 359685, at *4 (Tex. App.—Austin Apr.
12, 2001, pet. denied) (not designated for publication) (in dictum, noting that
“[p]ersonnel decisions are necessarily discretionary.”); cf. Enriquez v. Khouri, 13
S.W.3d 458, 463 (Tex. App.—El Paso 2000, no pet.) (holding that director
defendant’s summary-judgment evidence proved conclusively that her statements to
reporter, when she was not provided with rules or guidelines concerning contents of
statements, was discretionary act under meaning of Education Code immunity
statute); cf. also Deaver v. Bridges, 47 S.W.3d 549, 554 (Tex. App.—San Antonio
2000, no pet.) (holding that defendant was entitled to Education Code immunity
because, among other things, his interpretation of settlement agreement with plaintiff,
upon which his responses to outside inquiries were based, was left to his discretion).
          Flores responds that Castillo’s affidavit testimony concerning the Castillo E-Mail and the Castillo Letter contained hearsay. Although Flores raised this objection
at trial, she did not obtain a ruling on it. Because hearsay is an objection concerning
form and not substance, the objection may not be raised for the first time on appeal
of a summary-judgment ruling. Tex. Commerce Bank v. New, 3 S.W.3d 515, 517
(Tex. 1999); Rizkallah v. Conner, 952 S.W.2d 580, 589 n.7 (Tex. App.—Houston [1st
Dist.] 1997, no pet.). Accordingly, Flores has waived her hearsay challenge to
Castillo’s evidence. See Ausaf v. Highlands Ins. Co., 2 S.W.3d 363, 365 (Tex.
App.—Houston [1st Dist.] 1999, pet. denied) (“To preserve error on an objection to
summary judgment evidence, an order sustaining the objection must be in writing[,]
signed, and entered into the record.”).
          Because Castillo carried her burden on the discretionary-duty element, the
burden shifted to Flores to raise a material fact issue on this element. See Virginia
Indonesia Co., 910 S.W.2d at 907. Flores produced no evidence that did so. 
Accordingly, we hold that Castillo conclusively proved that the Castillo E-Mail and
the Castillo Letter were written and published in the performance of her discretionary
duties at HCC’s Southeast College. 
                    c.       Good Faith
          In addition to having presented the evidence mentioned above, Castillo
presented evidence that she had the opportunity to observe Flores’s performance as
part of Castillo’s day-to-day supervisory responsibilities over the deans concerning
budgetary issues, position control, and other oversight assignments that had been
delegated to Castillo. Castillo’s evidence showed that she based her opinion in the
Castillo E-Mail that Flores was not ready to handle an HCC presidency on the fact
that Central College was “a huge and complex institution” that had a “variety of
construction projects that would be complex to handle”; on her observation that
Flores had “difficulty with ambiguity”;


 on how “Flores conducted herself in
meetings”; and on “information reported to me . . . by students,” some of whom had
complained that Flores “was not being responsive to them regarding their stipends,
and others of whom had complaints that [Flores] was taking too long with their
disciplinary hearings.”



 
          We hold that this evidence carried Castillo’s burden of conclusively proving
that a reasonably prudent COO or interim president, in the same or similar
circumstances that faced Castillo, could have believed her drafting and sending the
Castillo E-Mail was justified based on the information that she possessed at the time. 
See Joe, 145 S.W.3d at 164. The burden thus shifted to Flores to produce some
evidence that no reasonable official in Castillo’s position could have believed that the
facts were such that they justified that act. See Telthorster, 92 S.W.3d at 465.
          Flores responded by producing ample summary-judgment evidence that
Castillo unfairly criticized Flores and attacked her work and reputation because (1)
Castillo wanted the HCC Central College presidency for herself and wanted to
prevent Flores, who had been the likely choice for that position, from obtaining it and
(2) Castillo was retaliating against Flores for her lawsuit or for her allies’ complaints
against Castillo. However, because “probative evidence on good faith is limited to
objective evidence,” “[g]ood faith in official immunity cases must be measured
against a standard of objective legal reasonableness, without regard to the official’s
subjective state of mind.” Tretta, 180 S.W.3d at 276 (rejecting consideration of
summary-judgment evidence that defendant official did not act in good faith because
he “disliked [plaintiff] and deliberately tried to prejudice his position and future at the
Hospital” because such evidence concerned defendant’s subjective state of mind). 
Moreover, this evidence does not meet Flores’s burden of showing that no reasonable
official in Castillo’s position could have believed that the facts were such that they
justified her actions. See Telthorster, 92 S.W.3d at 465; see also see Cayce v.
Pomposelli, No. 05-01-01706-CV, 2002 WL 31159968, at *2 (Tex. App.—Dallas
Sept. 30, 2002, pet. denied) (not designated for publication) (“We have reviewed [the
plaintiff’s] evidence that his transfer was retaliatory and [the individual defendants’]
remarks defamatory. However, we cannot conclude that [the plaintiff] has carried his
burden of proving that no reasonable person in [the individual defendants’] position
could have thought the facts were such that they justified their acts.”).
          Regarding the Castillo Letter, Castillo presented evidence, in addition to that
mentioned above, that “the backdrop” against which she discussed the matters raised
in the letter was as follows: (1) Castillo’s experience was that Flores had difficulty
taking directives from Castillo and accepting Castillo’s constructive criticisms
(Castillo included a specific example of this that was not controverted by Flores); (2)
Flores “often verbaliz[ed]” to Castillo that “[Flores] felt the college was not being
administered to her satisfaction”; and (3) HCC Trustee Garcia told Castillo that her
opinion was that “the president of the college [Castillo] should exercise a great deal
of authority over the personnel that were entrusted to them [sic]” and that Castillo
thus “should go ahead and make a recommendation to Chancellor Leslie to transfer
[Flores], if [Castillo] felt that [Flores] was having a difficult time accepting
supervision from [Castillo].” Castillo also averred that her statements about Flores’s
experience at Central College were based in part on what Flores had communicated
to Castillo herself and on the statements of Dr. Sylvie Ramos, the then-president of
HCC’s Southeast College, who told Castillo that the former president of Central
College had been getting ready to release Flores. Castillo also averred that she
mentioned Flores’s problems with African-American employees in the letter because
HCC Trustee Garcia had reported to Castillo that HCC “Trustee Michael P. Williams
. . . was concerned that some of the African Americans within the Southeast College
felt that they were being mistreated by [Flores]” and had wanted to know what
Castillo knew about the situation.


 Castillo further testified to basing her response
to this specific inquiry on her “involvement in handling a series of employee
grievances and my involvement with other personnel decisions.”
          We hold that this evidence carried Castillo’s burden of conclusively proving
that a reasonably prudent COO or interim president, in the same or similar
circumstances that faced Castillo, could have believed her drafting the Castillo Letter
was justified based on the information that she possessed at the time. See Joe, 145
S.W.3d at 164. The burden thus shifted to Flores to produce some evidence that no
reasonable official in Castillo’s position could have believed that the facts were such
that they justified the her conduct. See Telthorster, 92 S.W.3d at 465.
           In response, Flores first asserts that Castillo admits in her brief that the
“summary judgment evidence on this element is controverted.” Castillo’s brief did
not admit this: instead, Castillo’s briefing merely noted what Flores’s summary-judgment arguments below had been. Flores next relies on her summary-judgment
evidence that Castillo’s motives in making the statements were to prevent Flores from
obtaining the Central College presidency, so that Castillo could obtain it, and to
retaliate against Flores. This evidence does not carry Flores’s summary-judgment
good-faith burden because “probative evidence on good faith is limited to objective
evidence” and thus “[g]ood faith in official immunity cases must be measured against
a standard of objective legal reasonableness, without regard to the official’s
subjective state of mind.” Tretta, 180 S.W.3d at 276; see Telthorster, 92 S.W.3d at
465; Cayce, 2002 WL 31159968, at *2.
           We hold that Castillo conclusively proved the good-faith element with respect
to the Castillo E-Mail and the Castillo Letter.
 
                    d.       Resolution
          Because we have held that Castillo conclusively proved all elements of official
immunity, we further hold that the trial court erred in denying summary judgment on
that portion of the defamation claim based on the Castillo E-Mail and the Castillo
Letter on the ground of official immunity. We thus sustain that portion of Castillo’s
sole issue that challenges the denial of summary judgment on Flores’s defamation
claim based on the Castillo E-Mail and the Castillo Letter.
          2.       The Four Anonymous Letters and the Anonymous Faculty Petition

          Castillo also argues that the trial court erred in denying her motion for
summary judgment against Flores’s defamation claim that was based on the four
Anonymous Letters and the Anonymous Faculty Petition.


 Specifically, Castillo
argues that Flores offered no competent evidence that Castillo authored or published
the five anonymous documents.
          We reject Castillo’s challenge for two reasons.
                    a.       Castillo Did Not Raise This Argument Below as Part of Her
Official-Immunity Summary-Judgment Ground

          First, because “[s]ummary judgment is a harsh remedy,” an appellate court
“will strictly construe summary judgment in procedural and substantive matters
against the movant.” Tanksley v. CitiCapital Commercial Corp., 145 S.W.3d 760,
763 (Tex. App.—Dallas 2004, pet. denied) (citations omitted). Accordingly, “[w]e
strictly construe [the movant’s] summary judgment grounds.” City of Houston v.
Aspenwood Apartment Corp., No. 01-97-01378-CV, 2002 WL 89650, at *3 (Tex.
App.—Houston [1st Dist.] Jan. 24, 2002, no pet.) (not designated for publication). 
We do so because a summary judgment motion “must stand or fall on the grounds
expressly presented in the motion.” McConnell v. Southside Indep. Sch. Dist., 858
S.W.2d 337, 340 (Tex. 1993); accord Science Spectrum, Inc. v. Martinez, 941 S.W.2d
910, 912 (Tex. 1997).
          Castillo moved for summary judgment on the ground of official immunity on
Flores’s defamation claim only to the extent that that claim was based on the Castillo
Letter and the Castillo E-Mail. Castillo’s official-immunity ground attacking
defamation was expressly limited only to those two defamation allegations. Castillo
did not urge her official-immunity summary-judgment ground on the defamation
claim to the extent that that claim was based on the publication of any other
documents. It was only in a totally separate ground in her summary judgment
motion—a ground attacking the merits of the defamation claim under rule 166a(i) and
not relating to her official-immunity affirmative defense—in which Castillo argued
that the defamation claim failed, to the extent that it was based on the four
Anonymous Letters and the Anonymous Faculty Petition, because nothing showed
that she had written or published these documents.


 Strictly construing the grounds
in Castillo’s summary judgment motion, as we must, we conclude that she did not
assert official immunity as a defense to Flores’s defamation claim to the extent that
that claim was based on the four Anonymous Letters and the Anonymous Faculty
Petition.



 
          We note that “Texas law treats each alleged defamatory publication as a single
transaction with an independent injury.” Tex. Disposal Sys. Landfill, Inc. v. Waste
Mgm’t Holdings, Inc., No. 03-03-00631-CV, 2005 WL 1489681, at *5 (Tex.
App.—Austin June 23, 2005, no pet.); accord Marshall Field Stores, Inc. v.
Gardiner, 859 S.W.2d 391, 394 (Tex. App.—Houston [1st Dist.] 1993, writ dism’d,
w.o.j.) (“Each distinct publication of slander inflicts an independent injury from
which a slander cause of action may arise.”); see Akin v. Santa Clara Land Co., 34
S.W.3d 334, 340 (Tex. App.—San Antonio 2000, pet. denied) (citing this holding in
Marshall Field Stores, Inc.). Because each allegedly defamatory publication could
give rise to a separate cause of action for defamation, Flores’s petition, in effect,
asserted seven separate causes of action for defamation—each one based on the
publication of a separate document. Accordingly, her summary-judgment motion
could assert official immunity as a defense to some of Flores’s defamation
allegations, while not asserting it against others. This is, in fact, what a plain reading
of her motion leads us to conclude that she did.
          Accordingly, Castillo may not now urge that the affirmative defense of official
immunity applies to this aspect of Flores’s defamation claim.
                    b.       We Have No Jurisdiction to Review an Interlocutory
Summary-Judgment Order Rendered on a Basis Other Than
Official Immunity

          Second, to the extent that the order denying summary judgment was based on
a ground other than official immunity, we have no subject-matter jurisdiction to
review it in this interlocutory appeal. “Generally, we have jurisdiction to hear an
appeal from an interlocutory order only if a statute explicitly makes the order
appealable.” Ahmed v. Shimi Ventures, L.P., 99 S.W.3d 682, 688 (Tex.
App.—Houston [1st Dist.] 2003, no pet.). This appeal is from an interlocutory order
denying “a motion for summary judgment that is based on an assertion of immunity
by an individual who is an officer or employee of the state or a political subdivision
of the state,” which by statute is appealable. Tex. Civ. Prac. & Rem. Code Ann. §
51.014(5). “We must strictly construe section 51.014’s grant of interlocutory
jurisdiction because the Legislature intended it to be a narrow exception to the
general rule that only final judgments are appealable.” Ahmed, 99 S.W.3d at 688. An
interlocutory order denying summary judgment on a basis other than official
immunity is not appealable. See id. Therefore, we have no subject-matter jurisdiction
to review that portion of the trial court’s order denying judgment on the defamation
claim that was based on the five anonymous documents, against which Castillo did
not assert an official-immunity defense. See id.
                    c.       Resolution
           We overrule that portion of Castillo’s sole issue that challenges the denial of
summary judgment on Flores’s defamation claim based on the four Anonymous
Letters and the Anonymous Faculty Petition.
C.      Intentional Infliction of Emotional Distress
           In the remainder of her sole issue, Castillo argues that the trial court erred in
denying her summary-judgment motion on the basis of official immunity against
Flores’s claim for IIED.
          In Flores’s interrogatory answers, which Castillo produced as summary-judgment evidence, Flores described her claim for IIED as follows:
The extreme and outrageous conduct of . . . Castillo . . . is not in discrete
incidents, but in the totality of their acts which subjected me to contempt
and ridicule and ruined my professional reputation by publication of
defamatory statements, and the intentional failure to insure that the
defamatory statements were not published outside [HCC], by the day-to-day acts of insult, interference and harassment by Defendant Castillo,
. . . in particular the use and abuse by Defendant Castillo . . . of [her]
power over me as a subordinate, without providing any effective means
for me to respond or defend myself.




This interrogatory answer left intact the following allegations, from Flores’s live
petition, supporting her claim for IIED:
 
1.the publication of the seven documents underlying her defamation
claim;
 
2.“communicating with [HCC] officials and others to falsely and
unfairly criticize [Flores’s] character and performance”;
 
3.“falsely and inaccurately evaluating [Flores’s] performance of her
duties”;
 
4.“needlessly and maliciously interfering with [Flores’s]
management of her department and individuals under [Flores’s]
supervision”;
 
5.“promising [Flores] financial and other support for [her]
department and assignments, with the knowledge that the
promises would not be kept”;
 
6.“summoning [Flores] to conferences purportedly for college
business, but using the conferences solely to harass, interrogate
and threaten [Flores]”; 
 
7.“arbitrarily countermanding [Flores’s] personnel management
directives and decisions”; 
 
8.“rudely causing [Flores] to be interrupted during [her] public
presentations”;
 
9.“perversely mistreating [Flores’s] subordinates”;
 
10.“communicating to [Flores’s] subordinates and others that [she]
is disfavored and that those supporting or associating with [her]
will similarly be disfavored”;
 
11.“threatening [Flores] with unfavorable evaluations and other
adverse actions”;
 
12.“diminishing [Flores’s] authority and scope of discretion in the
management of [her] department and the performance of [her]
duties”;
 
13.“regularly and continually making [Flores’s] daily work harsh and
unbearable by other unfair acts of interference, criticism, and
obstruction”;
 
14.“manipulating good faith efforts at resolution to further injure and
discredit [Flores]”; and


 
15.“selecting a committee to screen candidates for the Southeast
College presidency that [Castillo] . . . knew in advance would not
fairly consider [Flores], nor recommend that [she] be considered
for the presidency.”
          As the summary-judgment movant, Castillo had the burden to prove
conclusively all elements of her affirmative defense—here, the affirmative defense
of official immunity. See Cathey, 900 S.W.2d at 341. To carry that burden, Castillo
had to prove conclusively, among other things, that she acted in objective good faith
in doing the actions alleged in Flores’s petition to constitute IIED. See id.; see also
Telthorster, 92 S.W.3d at 461. To prove objective good faith conclusively, Castillo
had to prove that a reasonably prudent official, under the same or similar
circumstances, could have believed that her complained-of conduct was justified
based on the information that she possessed at the time. See Joe, 145 S.W.3d at 164. 
          Although Castillo’s summary-judgment evidence at least partially addressed
the good-faith element with respect to two of the actions that Flores’s live petition
alleged constituted IIED,


 Castillo simply failed to present any such evidence with
respect to the majority of the actions alleged to have constituted IIED. Castillo’s was
a traditional summary-judgment motion, and the burden was thus entirely on her to
show her entitlement to official immunity on the IIED claim as pleaded by Flores. 
See Cathey, 900 S.W.2d at 341. Castillo failed to do this. Castillo’s summary-judgment affidavit did state that “all of the actions that I took with respect to [Flores]
in my supervisory capacity over her were taken in good faith” and “were based on my
assessment of the needs of the college and what I reasonably believed to be the
prudent course of action to meet those needs.” However, those statements are either
conclusory, and thus cannot support summary judgment as a matter of law,


 or
concerned her subjective belief of the prudent course of action, which is not the test
for official-immunity good faith.


 Accordingly, we hold that the trial court did not
err in denying summary judgment on Castillo’s official-immunity defense to Flores’s
IIED claim because Castillo did not conclusively prove the good-faith element and,
thus, the affirmative defense.
 
Conclusion
          “If the error affects part of, but not all, the matter in controversy and that part
is separable without unfairness to the parties, the judgment must be reversed and a
new trial ordered only as to the part affected by the error.” Tex. R. App. P. 44.1(b). 
Because “Texas law treats each alleged defamatory publication as a single transaction
with an independent injury,”


 and because Flores alleged seven separate incidents of
defamation—each of which allegations appears separable without unfairness to the
parties, and on only some of which allegations the trial should have rendered
summary judgment—we conclude that this is one of the situations in which rule
44.1(b) requires that the judgment be reversed in part. See id. (making above-referenced disposition mandatory, with certain exceptions inapplicable here, if error
affecting part of controversy is separable without unfairness to parties). This Court
has done so before in an appeal from a summary judgment asserting, among other
grounds, official immunity as a defense to a defamation claim based on separate
defamatory statements. See Perry v. Greanias, 95 S.W.3d 683, 692, 699, 700-01, 702
(Tex. App.—Houston [1st Dist.] 2002, pet. denied); see also Woodland v. Wisdom,
975 S.W.2d 712, 717 (Tex. App.—Texarkana 1998, no pet.) (reversing partition
judgment only as to its partition of certain assets, based on affirmative defense
relating only to those assets, and affirming judgment as to its partition of other assets,
to which affirmative defense did not apply). Moreover, this is how the parties
litigated the defamation claim in their summary-judgment pleadings below: both
treated the defamation claim based on the Castillo E-Mail and the Castillo Letter
differently from how they treated the defamation claim based on the five anonymous
letters—understandably, too, because Castillo asserted official immunity as a
summary-judgment ground only as to the former, not as to the latter.
 

          Accordingly, we reverse that portion of the trial court’s order denying summary
judgment on the basis of official immunity on Flores’s claim for defamation, but only
to the extent that that claim was based on the Castillo Letter and the Castillo E-Mail.


 
We affirm that portion of the order denying summary judgment on the remainder of
Flores’s defamation claim and on her IIED claim against Castillo. We further remand
the cause with instructions to grant Castillo’s summary judgment motion on that
portion of Flores’s defamation claim based on the Castillo Letter and the Castillo E-Mail. 
 
Tim Taft
Justice
Panel consists of Justices Taft, Higley, and Bland.