# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 4, 2019

No. 19-20072

Lyle W. Cayce
Clerk

MACK PETERSON; DON PETERSON; LONNY PETERSON,

Plaintiffs - Appellants

v.

SILVERADO SENIOR LIVING, INCORPORATED,

Defendant – Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-51

Before STEWART, CLEMENT, and HO, Circuit Judges.

PER CURIAM:*

Mack, Don, and Lonny Peterson ("the Petersons") appeal the district court's judgment granting Silverado Senior Living's ("Silverado") Rule 12(b)(6) motion to dismiss for failure to state a claim. For the following reasons, we affirm.

## I. Factual & Procedural Background

Ruby Peterson was a patient in her nineties at Silverado's assisted living facility in Sugarland, Texas, until she died in January 2015. The Petersons are

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

some of Ruby's adult children who filed suit against Silverado in January 2017, approximately two years after Ruby's death. They alleged breach of contract and negligence claims on behalf of Ruby's estate as well as a wrongful death claim that Silverado caused Ruby's demise and death. Silverado moved for summary judgment asserting that the Petersons lacked standing to bring claims on behalf of Ruby's estate. Silverado also claimed that judgments in previous actions collaterally estopped the Petersons from bringing the wrongful death claim.

The district court granted summary judgment in favor of Silverado on the Petersons' survival claims concluding that they lacked standing to bring claims on behalf of Ruby's estate. The district court denied summary judgment on the wrongful death claim explaining that it found "Plaintiffs' pleadings completely void of any factual assertions supporting their wrongful death claim" and thus it could not effectively evaluate "whether the wrongful death claim [was] based on the same nucleus of operative facts as Plaintiffs' previous suits against Defendant." The district court then gave the Petersons two additional opportunities to amend their pleadings to state a plausible wrongful death claim. In their second amended complaint,[1] the Petersons alleged that Silverado forced Ruby to take Seroquel, that Seroquel is a medication known to cause pneumonia, that pneumonia can cause death in elderly patients, and that Ruby contracted pneumonia and died a month after Silverado forced her to take the Seroquel.

After the second amended pleading was filed, Silverado again moved to dismiss the suit under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). On January 3, 2019, the district court granted the motion, dismissing the Petersons' claims

---

[1] The Petersons incorrectly titled their second amended complaint as "Plaintiffs' First Amended Complaint."

with prejudice.[2] The district court first noted that, without seeking leave, the Petersons asserted two new claims on behalf of Ruby's estate. It observed that, even if the claims were properly before it, the Petersons still lacked standing to sue on behalf of Ruby's estate, so the claims were dismissed. The district court then dismissed the remaining claim based on the Petersons' failure to state a claim under Texas's wrongful death statute. Specifically, the district court determined that the claim failed to identify how Silverado's actions contributed to Ruby's death. On January 28, 2019, the Petersons noticed their appeal from "the final order entered in this action by the trial court on 4 January 2019."

## II. Standard of Review

We review the district court's grant of a motion to dismiss de novo, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff. *See Hines v. Alldredge*, 783 F.3d 197, 200–01 (5th Cir. 2015). To survive a motion to dismiss, a plaintiff must "allege facts sufficient to 'state a claim for relief that is plausible on its face.'" *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The dismissal will be upheld only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (quoting *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).

---

[2] Its final order was entered January 4th.

No. 19-20072

## III. Discussion

As a preliminary matter, the Petersons dedicate some of their argument on appeal to the district court's dismissal of their claims brought on behalf of Ruby's estate. But their initial survival claims are not properly before this court because they were disposed of in the prior summary judgment rendered in favor of Silverado, and the Petersons did not appeal that judgment. Likewise, the two new survival claims they attempted to bring on behalf of Ruby's estate in their second amended complaint were never properly before the district court because they failed to seek leave to file those claims.[3] *See* Fed. R. Civ. P. 15(a)(2).

Consequently, the primary issue on appeal here is whether the district court erred in granting Silverado's motion to dismiss the Petersons' wrongful death claim. Under Texas's wrongful death statute, "[a] person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's . . . wrongful act, neglect, carelessness, unskillfulness, or default." TEX. CIV. PRAC. & REM. CODE § 71.002(b). The

---

[3] Nevertheless, even if the survival claims were before us, we would affirm the district court's dismissal of them. Texas law establishes that "generally, personal representatives of the decedent's estate are the only people entitled to sue to recover estate property." *Shepherd v. Ledford*, 962 S.W.2d 28, 31 (Tex. 1998). A decedent's heirs who are not executors may have standing to sue on behalf of the estate "if they allege and prove that there is no administration pending and none necessary." *Id.* at 31–32. The record reveals, however, that two other people—David Troy Peterson and Carol Ann Manley—were appointed as the personal representatives of Ruby's estate. On appeal, the Petersons claim that they have standing to bring these claims because they requested to join the executors of Ruby's estate as indispensable parties under Rule 19. *See* Fed. R. Civ. P. 19. The district court denied that request though, explaining that the Petersons' attempt "to get around their inability to bring" the claims that belong to the executors of Ruby's estate "is unsupported by case law and inappropriate." Moreover, the Petersons have failed to point to a case in this circuit that allows a party to create for himself the right to bring a claim by joining the party who is the sole owner of that right. *Cf. Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). The district court did not err in determining that the Petersons lacked standing to bring claims on behalf of Ruby's estate.

statute "authorizes claims only for actions that actually *cause* death." *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 404 (Tex. 1993) (emphasis in original). Texas law defines causation by common law. *See Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995). "The ultimate standard of proof on the causation issue 'is whether, by a preponderance of the evidence, the negligent act or omission is shown to be a substantial factor in bringing about the harm and without which the harm would not have occurred.'" *Id.* (quoting *Kramer*, 858 S.W.2d at 400). This means that "recovery is barred when the defendants' negligence deprived the patient of only a fifty percent or less chance of survival." *Id.*

Here, the district court concluded that the Petersons' second amended complaint "contains limited factual details surrounding [Ruby's] death," and that the Petersons "fail[ed] to identify how Silverado's actions contributed to [Ruby's] death." We agree. In their second amended complaint, the Petersons detail the following allegations: (1) Silverado "forced [Ruby] to take Seroquel against her will so they could subdue and control her"; (2) "Seroquel is a dangerous drug which when administered to patients with even minor dementia might cause a patient to become infected with pneumonia, which in the elderly . . . could very possibly lead to death"; (3) "In December of 2014 [Ruby] became infected with pneumonia"; and (4) approximately one month later, Ruby died. The complaint continues that "[a]s a direct and proximate result of Silverado's misconduct as aforesaid [*i.e.*, forcing Ruby to take Seroquel], Silverado unlawfully wrongfully killed [Ruby]."

Even accepting the alleged facts as true, the Peterson's second amended complaint is insufficient to support a plausible inference that Silverado's actions were more likely than not the cause of Ruby's death. *See Park Place Hosp.*, 909 S.W.2d at 511; *see also Plummer v. Univ. of Hous.*, 860 F.3d 767, 780 (5th Cir. 2017) (noting that proof "by a preponderance of the evidence" is a

"more likely than not" standard). The connection between Silverado's administration of Seroquel to Ruby and her later death is tenuous at best. As the district court noted, the Petersons allege that Seroquel "might" cause a patient to contract pneumonia and that pneumonia "could very possibly" lead to death. But these allegations are not enough to achieve causation under Texas's wrongful death statute. In essence, we are being asked first to agree that, of all possible causes, Seroquel caused Ruby's pneumonia. And second, we must agree that, of all possible causes of death in an elderly nursing home patient, it was more likely than not that pneumonia—caused solely from ingesting Seroquel—actually caused Ruby's death. *See Kramer*, 858 S.W.2d at 404 (stating that the statute "authorizes claims only for actions that actually *cause* death" (emphasis in original)). There are simply too many suppositions required here to achieve causation under the preponderance of the evidence standard. *See Park Place Hosp.*, 909 S.W.2d at 511.

For these reasons, we hold that the district court did not err in dismissing the Petersons' wrongful death claim.

## IV. Conclusion

In light of the foregoing, we affirm the district court's order in full.