TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00372-CV






Donna Schooley, Individually and on Behalf of the Estate of Clifford Schooley; and 

John Gabriel Schooley and Erika Nicole Schooley, Appellants


v.


Karman Weatherby, M.D., Appellee






FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT

NO. C-06-1599-C, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 In this appeal, we must decide whether the trial court properly dismissed a health care
liability claim based on the claimants' failure to serve an adequate expert report in compliance
with chapter 74 of the civil practice and remedies code. See Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(a), (l) (West Supp. 2008). Donna Schooley, individually and on behalf of the Estate of
Clifford Schooley, John Gabriel Schooley, and Ericka Nicole Schooley contend that the trial court
abused its discretion by dismissing their suit against Karman Weatherby, M.D., because their
survival claim was adequately pled and because their wrongful-death claim was supported by
expert reports that provided a fair summary of the experts' opinions about causation. See id.
§ 74.351(l), (r)(6).

 Because we conclude that the Schooleys' wrongful-death claim was not supported
by an expert report that provided a fair summary of the expert's opinion about causation,
the trial court's order is affirmed in part. However, review of the record demonstrates that
the Schooleys' pleadings support a survival claim and that the survival claim was not addressed
by Dr. Weatherby's motion to dismiss. Because we conclude that the order dismissing the
Schooleys' suit granted greater relief than requested by Dr. Weatherby's motion and was an abuse
of discretion, the trial court's order is reversed in part, and this cause is remanded to the trial court
for further proceedings.


BACKGROUND

 After being diagnosed with colorectal cancer, Mr. Schooley was scheduled for
surgery (1) at San Angelo Community Hospital with Dr. Weatherby. Mr. Schooley's preoperative CT
scan suggested a potential liver metastasis, but it was not confirmed on later CT scans. During the
surgery on September 27, 2004, Dr. Weatherby nicked Mr. Schooley's spleen, causing bleeding that
Dr. Weatherby treated with cauterization of the wound and placement of a drain along the injury site
to monitor the bleeding postoperatively. Mr. Schooley's internal bleeding continued postoperatively,
and daily laboratory tests revealed his decreasing hemoglobin and hematocrit levels. Five days after
surgery, Mr. Schooley passed out and fell from his hospital bed. His wife caught him, eased him to
the floor, and called for nursing assistance. Mr. Schooley's bleeding from the drain increased. Two
days later, Dr. Weatherby ordered a CT scan and performed exploratory surgery on Mr. Schooley,
who was found to have a large internal blood clot and ruptured anastomosis, (2) resulting in sepsis. (3)

 Dr. Weatherby performed four additional surgeries to control Mr. Schooley's sepsis. 
Mr. Schooley remained hospitalized in the intensive care unit until November 22, 2004, when he was
discharged to a rehabilitation center for wound care. Because of his ongoing sepsis, Mr. Schooley
was readmitted to San Angelo Community Hospital three times. In April 2005, a CT scan showed
that Mr. Schooley's cancer had metastasized to his liver, but he was unable to start chemo-radiation
treatment until May 2005 because of his multiple complications and prolonged recovery after the
initial surgery. He passed away on June 11, 2006.

 The Schooleys sued Dr. Weatherby, contending that Mr. Schooley experienced
significant pain, suffering, and mental anguish in the months after his initial surgery and that he
would have been able to start proper and timely cancer treatment if he had received the acceptable
standard of care preoperatively and postoperatively from Dr. Weatherby. In support of their
claim, the Schooleys timely served two experts' reports. See id. § 74.351(a). The report from
Dr. Omar Barakat, a surgeon and liver disease specialist, was offered to address Dr. Weatherby's
negligence with regard to his management of the splenic injury and his untimely detection and
management of the postoperative bleeding. The report from Dr. Stephen C. Cohen, a board-certified
oncologist, was offered to address the consequences of the delay in Mr. Schooley's chemotherapy.

 Dr. Weatherby filed a motion seeking to dismiss only the Schooleys' claim for
wrongful-death. He alleged that the reports of the Schooleys' experts were inadequate, individually
and collectively, because they did not state how any breach of the standard of care by Dr. Weatherby
proximately caused Mr. Schooley's death. See id. § 74.351(r)(6). Both reports, Dr. Weatherby
noted, lacked any reference to the proper causation standard: whether, by a preponderance of the
evidence, the negligent act or omission is shown to be a substantial factor in bringing about the harm,
and without which the harm would not have occurred. See IHS Cedars Treatment Ctr. of Desoto,
Tex., Inc. v. Mason, 143 S.W.3d 794, 799 (Tex. 2004).

 Dr. Barakat's report, in Dr. Weatherby's view, was inconclusive because it stated
only that an oncologist thought that chemotherapy was necessary and that there was a delay, but it
did not set forth causation as to Mr. Schooley's death. (4) The Schooleys responded that Dr. Weatherby
did not challenge the causal link that Dr. Barakat's report made between Dr. Weatherby's breach of
the standard of care and Mr. Schooley's postoperative complications before his death. They further
noted that Dr. Barakat did not offer an opinion about the causal significance of the delayed
chemotherapy because he is not an oncologist, but that the causation element was addressed in
Dr. Cohen's report.

 Dr. Cohen's report, according to Dr. Weatherby, was conclusory because it opined
that Mr. Schooley had a cure rate of greater than 50% but did not contain facts establishing that at
the time of the alleged malpractice Mr. Schooley had a 50% or greater chance of recovery despite
his stage III cancer diagnosis. (5) Recovery on a health care liability claim is barred when the
defendant's negligence deprives the patient of only a 50% or less chance of survival. See Park Place
Hosp. v. Milo, 909 S.W.2d 508, 511 (Tex. 1995); Kramer v. Lewisville Mem'l Hosp., 858 S.W.2d
397, 400 (Tex. 1993) (holding that Texas law does not recognize action for loss of chance of survival
in medical malpractice cases). Dr. Weatherby argued that the report failed to state facts supporting
Dr. Cohen's conclusions that the delayed chemotherapy proximately caused the progression of
Mr. Schooley's cancer and his death and that Mr. Schooley's death would not have occurred if the
chemotherapy had not been delayed. The Schooleys responded that Dr. Cohen provided a sufficient
factual basis linking the chemotherapy delay--caused by Dr. Weatherby's breach of the standard of
care--to Mr. Schooley's progressive disease and death. The Schooleys further urged the trial court
to deny Dr. Weatherby's motion to dismiss their suit because Dr. Weatherby did not challenge the
causal link between his alleged failure to properly detect and manage the splenic tear as well as the
postoperative bleeding and Mr. Schooley's pain and suffering during the two months after his
surgery with related hospital expenses exceeding $700,000.

 After a hearing, the trial court granted Dr. Weatherby's motion, dismissing the
Schooleys' suit in its entirety with prejudice. The Schooleys filed a motion for reconsideration,
emphasizing that they had pled a survival claim in addition to the wrongful-death claim and that their
survival claim was not addressed by Dr. Weatherby's motion to dismiss. Alternatively, if the court
found Dr. Cohen's expert report deficient with regard to their wrongful-death claim, the Schooleys
requested a thirty-day extension to cure any deficiency. See Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(c) (West Supp. 2008); see also Lewis v. Funderburk, 253 S.W.3d 204, 208 (Tex. 2008)
(rejecting argument that deficient report may be cured only by amendment of original expert's report
and holding that claimant may cure deficient report by serving new report from separate expert). The
court issued an order that denied the Schooleys' motion for reconsideration but did not address the
thirty-day extension that they sought as alternative relief. (6) This appeal followed.



DISCUSSION

Purpose of expert reports under chapter 74

 Section 74.351 of the civil practice and remedies code requires a claimant asserting 
a health care liability claim to serve one or more expert reports on each party no later than the 120th
day after the filing of the original petition. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). Expert
reports required under section 74.351(a) are intended to serve two purposes: (1) to inform the
defendant of the specific conduct the claimant is questioning, and (2) to "provide a basis for
the trial court to conclude that the claims have merit." Leland v. Brandal, 257 S.W.3d 204, 206-07
(Tex. 2008) (quoting American Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 879
(Tex. 2001)). The reports must provide "a fair summary of the expert's opinions as of the date of
the report regarding applicable standards of care, the manner in which the care rendered by
the physician or health care provider failed to meet the standards, and the causal relationship between
that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(r)(6); see Jernigan v. Langley, 195 S.W.3d 91, 93 (Tex. 2006). A motion challenging the
adequacy of an expert's report shall be granted only if the report does not represent an objective good
faith effort to comply with the statutory definition of an "expert report." Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(l).


Standard of review

 We review a trial court's decision to dismiss a health care liability claim for failure
to comply with the expert-report requirements of section 74.351 under an abuse of discretion
standard. See Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). The trial court abuses
its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules
or principles. Wright, 79 S.W.3d at 52 (citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 241-42 (Tex. 1985)). Because a trial court has no discretion in determining what the law is or
applying the law to the facts, a clear failure by the trial court to analyze or apply the law correctly
will constitute an abuse of its discretion. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).


Survival claim

 In their first issue, the Schooleys assert that the trial court's dismissal of their suit
against Dr. Weatherby was an abuse of discretion because their survival claim was pled adequately. 
The Schooleys informed the trial court in their written response, at the hearing on the motion to
dismiss, and in their motion for reconsideration that they pled two causes of action: a wrongful-death claim and a survival claim based on personal injuries sustained by Mr. Schooley while he was
alive. A survival action, according to the Texas Supreme Court, is an action that belongs to the
decedent and is derivative of his rights:


[Under the Texas Survival Statute], a decedent's action survives his death and may
be prosecuted in his behalf. The survival action, as it is sometimes called, is wholly
derivative of the decedent's rights. The actionable wrong is that which the decedent
suffered before his death. The damages recoverable are those which he himself
sustained while he was alive and not any damages claimed independently by the
survival action plaintiffs (except that funeral expenses may also be recovered if they
were not awarded in a wrongful death action). Any recovery obtained flows to those
who would have received it had he obtained it immediately prior to his death--that
is, his heirs, legal representatives and estate. See Tex. Civ. Prac. & Rem. Code Ann.
§ 71.021(b) (West 1997). The parties to a survival action seek adjudication of the
decedent's own claims for the alleged injuries inflicted upon [him] by the defendant.



Austin Nursing Ctr., Inc. v. Lovato, 171 S.W.3d 845, 849-50 (Tex. 2005). Dr. Weatherby's brief
does not directly address the Schooleys' first issue concerning the trial court's dismissal of their
survival claim. (7) However, he does suggest that the wrongful-death claim was the only damage,
harm, and injury alleged by the Schooleys, noting that "Appellants plead a medical negligence death
action, a viable cause of action and, Appellants' pleadings were not vague as to the harm and damage
claimed: Mr. Schooley's untimely death." See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6)
(requiring expert reports to provide causal relationship between health care provider's failure to meet
standard of care and plaintiff's claimed injury, harm, or damages).

 The injury, harm, and damages claimed by the Schooleys are stated in their petition. 
To determine whether the Schooleys' survival claim was adequately pled, we consider whether their
petition gave Dr. Weatherby "fair notice" of that claim. The fair notice standard of pleading looks
to whether the opposing party can ascertain from the pleading the nature and basic issues of
the controversy and what testimony will be relevant. Horizon/CMS Healthcare Corp. v. Auld,
34 S.W.3d 887, 896-97 (Tex. 2000). According to the Texas Supreme Court, a petition that provides 
"fair and adequate notice of the facts upon which the pleader bases his claim" is sufficient. Id. at 897 
(quoting Roark v. Allen, 633 S.W.2d 804, 810 (Tex. 1982)). This rule is intended to "give the
opposing party information sufficient to enable him to prepare a defense." Id.



 The fifth page of the Schooleys' Second Amended Petition states:


Plaintiffs will show the court and jury that CLIFFORD SCHOOLEY experienced
significant pain and suffering and mental anguish in the many months after his initial
surgery and the sequela that followed. In addition, they will show that in the absence
of Defendant Dr. Weatherby's negligence, CLIFFORD SCHOOLEY could
reasonably have been expected to live years into the future with a quality [life] had
he been properly treated by Defendant. Medical expenses were incurred prior to his
death, and funeral and burial expenses were incurred following his death. For these
losses, Plaintiffs will ask the Court to award actual damages against Defendant.



During the hearing on the motion to dismiss, counsel for Dr. Weatherby opined that this pleading
did not state a survival claim: "The Plaintiff[s] also argue[] in their response, Your Honor, that this
is not simply a death case, that this is also a survival case in which Mr. Schooley's damages are
recoverable and that Doctor Barakat's report addresses that. I don't read their Second Amended
Petition that way." (8)
 We disagree. We are persuaded that the Schooleys' pleading in this case fits
the Texas Supreme Court's description of a survival action because the actionable wrong is that
which the decedent suffered before his death and the damages sought are those which he himself
sustained while he was alive. See Lovato, 171 S.W.3d at 849-50.

 We conclude that the wrongful-death claim was not the only cause of action
supported by the Schooleys' pleadings--they also pled a survival claim that was not addressed by
Dr. Weatherby's motion to dismiss. The trial court's order dismissing the Schooleys' suit granted
greater relief than that which was requested in Dr. Weatherby's motion. See Lehmann v. Har-Con
Corp., 39 S.W.3d 191, 204 (Tex. 2001) (noting that order granting summary judgment motion which
addresses all of plaintiff's claims when filed but does not address claims timely added by amendment
after motion is filed is reversible order because it grants greater relief than movant was entitled to
receive); Crooks v. Moses, 138 S.W.3d 629, 641 (Tex. App.--Dallas 2006, pet. denied) (citing
Lehmann and holding that summary judgment motion seeking dismissal of negligent activity
and premises liability claims did not pray for any relief on negligent-undertaking claim and thus
court's order erroneously granted greater relief than requested). Because the Schooleys' survival
claim was dismissed along with the wrongful-death claim in the trial court's order, we conclude that
the dismissal of the Schooleys' suit was an abuse of the trial court's discretion. We sustain the
Schooleys' first issue.


Wrongful-death claim

 In their second issue, the Schooleys contend that the trial court's dismissal of their
suit against Dr. Weatherby was an abuse of discretion because their wrongful-death claim was
supported by expert reports that provided a fair summary of the experts' opinions about causation. 
See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i) (authorizing use of more than one expert report
to address issues such as liability and causation); Funderburk, 253 S.W.3d at 208 (noting that
claimant may satisfy any requirement of section 74.351 by serving reports of separate experts). To
satisfy the causal-relationship element in subsection 74.351(r)(6), experts must explain the basis of
the statements in their reports to link their conclusions to the facts. See Wright, 79 S.W.3d at 52;
Earle v. Ratliff, 998 S.W.2d 882, 890 (Tex. 1999).

 Dr. Barakat's ten-page report stated that after Dr. Weatherby tore the spleen, he
breached the acceptable standard of care through his inadequate management of bleeding from the
spleen and his untimely detection and management of post-operative bleeding. Specifically, the
report states that Dr. Weatherby deviated from the acceptable standard of care by failing to control
the bleeding from the spleen before closing Mr. Schooley, by placing a Jackson-Pratt drain to treat
the laceration from Mr. Schooley's spleen, and by failing to act expeditiously in ordering a CT scan
and performing exploratory laparotomy on Mr. Schooley when he showed clinical signs of
continuous hemorrhage from "post-op day 2 through post-op day 5." The report then explains
thatdelayed treatment of the bleeding spleen for five days allowed a large blood clot to develop,
which cultivated bacteria, applied pressure that decreased blood supply to the newly fashioned
anastomosis (blood-vessel network), and caused it to rupture. The ruptured anastomosis allowed
colonic contents to begin leaking into the abdominal cavity, resulting in Mr. Schooley's severe
sepsis, septic shock, and multi-organ failure. Dr. Barakat's report states that these events caused
many months of delay in the chemo-radiation therapy that was recommended by oncologist
Dr. Fazlur Rahman to complete Mr. Schooley's battle against cancer. This report connects
Dr. Weatherby's breach of the standard of care (the inadequate management of Mr. Schooley's
bleeding spleen after Dr. Weatherby tore it) to Mr. Schooley's postoperative complications before
his death (bleeding from spleen developing into clot, bacterial cultivation, pressure on the
anastomosis and its rupture, sepsis, multiple organ system failure, four additional surgeries, and
prolonged recovery phase during which chemotherapy was delayed). The Schooleys acknowledge
that Dr. Barakat's report did not offer an opinion about the consequences of the delayed
chemotherapy because Dr. Barakat is not an oncologist. Instead, the Schooleys relied on the report
provided by Dr. Cohen, who is an oncologist, to address that matter.

 Dr. Cohen's report was offered to link Dr. Weatherby's breach of the standard of care
to Mr. Schooley's death. It states that when Mr. Schooley underwent his resection of a colon cancer
in September 2004, his CT scans showed that the cancer appeared to be localized. Shortly after that
initial surgery, oncologist Dr. Rahman recommended treating Mr. Schooley's stage III cancer with
chemotherapy. But there was an "exceeding[ly] long delay" in Mr. Schooley's chemotherapy. He
had multiple complications from the injury to his spleen and a "prolonged, life-threatening recovery
from multiple organ system failure and sepsis." While "optimum timing of adjuvant chemotherapy
is essential and would with reasonable medical probability have produced a cure rate of greater
than 50%," Mr. Schooley "never had the opportunity to receive adjuvant chemotherapy." Relying
on CT scans, Dr. Cohen's report notes that before Mr. Schooley's initial surgery and during his
prolonged recovery phase, the cancer was not known to have metastasized. It was not until April
2005 that Mr. Schooley had an abnormal CT scan, revealing that his cancer had metastasized to the
liver. The "delay in adjuvant chemotherapy," according to Dr. Cohen, was "the proximal cause of
[Mr. Schooley]'s progressive disease and death."

 Dr. Weatherby faults Dr. Cohen's report for failing to "set forth facts to support his
conclusion that delay in the adjuvant chemotherapy proximately caused the progression of
Mr. Schooley's advanced colo-rectal cancer and his death, without which Mr. Schooley's death
would not have occurred." Dr. Weatherby also asserts that we cannot know whether Mr. Schooley's
cancer would have responded to chemotherapy, whether he would have experienced a period of
remission, suffered complications from the chemotherapy, or had his cancer "reappear and/or spread
only to eventually succumb to [his] disease." As a preliminary matter, we disagree with the
suggestion that the Schooleys were statutorily required to produce an expert report stating that
Mr. Schooley's cancer would never reappear or that Mr. Schooley would not eventually succumb
to his disease. Such an interpretation misapplies the causation element in subsection 74.351(r)(6)
of the civil practice and remedies code and would effectively bar every cancer patient from
proceeding with a health care liability claim unless the patient could provide an expert report stating
that the patient's "chance" of recovery is 100%. Cf. Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(r)(6); see Milo, 909 S.W.2d at 511 (noting that patient's recovery is barred when health
care provider's negligence deprives patient of only 50% or less chance of survival) (citing Kramer,
858 S.W.2d at 400).

 Here, the Schooleys sought to meet the requirements of subsection 74.351(r)(6)
through two experts' reports. The function of Dr. Barakat's report, according to the Schooleys, was
to explain how Dr. Weatherby's conduct breached the standard of care and to connect that breach
to Mr. Schooley's postoperative complications and the delayed chemotherapy before he died. The
function of Dr. Cohen's report was to pick up where Dr. Barakat's report left off, linking the delayed
chemotherapy to the progression of Mr. Schooley's disease and death and providing a sufficient basis
for the court to conclude that the Schooleys' wrongful-death claim against Dr. Weatherby has merit. 
See Palacios, 46 S.W.3d at 879.

 Dr. Cohen's report included the following facts: Mr. Schooley had stage III colon
cancer with four of seven positive lymph nodes and pericolonic fat involvement; his cancer appeared
to be a localized phenomenon when the resection surgery was performed; he had multiple
complications stemming from an injury to the spleen; he had a life-threatening recovery from
multiple organ system failure and sepsis; he experienced an exceedingly long delay in starting
oncologist-recommended chemotherapy; and by April 2005 his cancer had metastasized to the liver,
an area where metastases were not known to be present in September 2004. How those facts figured
into Dr. Cohen's opinion about Mr. Schooley's cure rate is unexplained in the report. No reference
is made to recognized studies, scientific journals, or texts to support Dr. Cohen's conclusion that
timely chemotherapy would, with reasonable medical probability, have provided Mr. Schooley with
a cure rate of greater than 50% before his cancer had metastasized to the liver. See Costello
v. Christus Santa Rosa Health Care Corp., 141 S.W.3d 245, 247 (Tex. App.--San Antonio 2004,
no pet.) (noting that expert's report was inadequate because it did not explain medical basis or
reasoning for his conclusion that patient "in all reasonable medical probability" would have
survived); Hodgkins v. Bryan, 99 S.W.3d 669, 674-75 (Tex. App.--Houston [14th Dist.] 2003,
no pet.) (holding that expert's affidavit was conclusory because it did not state facts or studies to
support his conclusion that patient would have survived with prompt treatment). (9) Here, evidence
that cancer was present in Mr. Schooley's liver in 2005 when it was not known to be there in 2004
is insufficient, without more, to establish the element of causation.

 The trial court could have reasonably determined that the assertion in Dr. Cohen's
report that chemotherapy "would with reasonable medical probability have provided a cure rate of
greater than 50%" was a conclusory statement and did not represent a good-faith effort to summarize
the causal relationship between Dr. Weatherby's deviation from the applicable standard of care and
Mr. Schooley's death. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l), (r)(6); Wright, 79 S.W.3d
at 53. Thus, we conclude that the court did not abuse its discretion by granting Dr. Weatherby's
motion to dismiss with regard to the Schooleys' wrongful-death claim. We overrule the Schooleys'
second issue.


CONCLUSION

 Having sustained the Schooleys' first issue and overruled the second, we affirm the
trial court's order on the wrongful-death claim, reverse the order on the survival claim, and remand
this cause to the trial court for further proceedings consistent with this opinion.




 

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed in part; Reversed and Remanded in part

Filed: November 6, 2008
1. The surgery was a "low anterior resection of the colon and rectum with primary
anastomosis."
2. Anastomosis, in this context, is the union of blood vessels. See Webster's Collegiate
Dictionary 42 (10th ed. 2001).
3. Sepsis is a toxic condition resulting from the spread of bacteria or their products from a
focus of infection. Id. at 1064.
4. Dr. Weatherby criticizes the following paragraph in Dr. Barakat's report:


In reasonable medical probability, the splenic bleed which developed into a large
intra-abdominal hematoma for 5 days resulted in the colonic leak, and consequently
severe sepsis and then septic shock, multi-organ failure, prolonged hospitalization
with attendant expense and extreme pain and suffering. All of these events caused
many months of delay in Mr. Schooley receiving adjuvant chemo-radiation therapy
that Dr. Rahman the oncologist felt he needed to complete his battle against 
advanced rectal cancer. A leak following a low anterior resection is a recognized
complication. However, in reasonable medical probability, this colonic leak would
have been avoided with proper management of the splenic tear and timely detection
and management of postoperative bleeding when the hemoglobin and hematocrit
dropped by 2 grams in one day.
5. Dr. Weatherby finds fault with the following paragraph in Dr. Cohen's report:


The patient eventually had an abnormal CT scan of his abdomen in April 2005,
which subsequently was proven to be liver metastases. The patient had an
exceeding[ly] long delay for what would have been adjuvant chemotherapy. The
patient was seen by a Medical Oncologist, Dr. Fazlur Rahman, shortly after his
surgery who suggested that the patient receive adjuvant therapy for his stage III colon
cancer . . . . Optimum timing of adjuvant chemotherapy is essential and would with
reasonable medical probability have produced a cure rate of greater than 50%. 
Unfortunately, the patient never had the opportunity to receive adjuvant
chemotherapy. The final radiological review of a preoperative CT scan of the
abdomen September 2004 and April 2005 indicated that the original suspected lesion
was not confirmed on reevaluation. Therefore, metastases were not known to be
present at the time of his initial surgery, and his prolonged recovery phase. This
delay in the adjuvant chemotherapy is the proximal cause of this patient's progressive
disease and death.
6. The Schooleys do not present any issue about their requested thirty-day extension.
7. Dr. Weatherby's brief frames this appeal as a single issue: whether the trial court abused
its discretion in granting the motion to dismiss based on expert reports that did not state how any
breach of the standard of care by Dr. Weatherby proximately caused Mr. Schooley's death.
8. During the hearing on the motion to dismiss, counsel for Dr. Weatherby volunteered that 
Dr. Barakat's report was sufficient to support a survival claim:


I will tell the Court this, in the event that the Court reads the Plaintiffs' Second
Amended Petition to provide for a survival action, I think Doctor Barakat's report is
sufficient to establish the standard of care, breach, and causation of damage to
Mr. Schooley. I don't read their pleading as pleading a survival action. Again, the
damages that they seek in the paragraphs tied to Doctor Weatherby's negligence are
for untimely death and that's why our motion addressed the wrongful death case.

9. Cf. Romero v. Lieberman, 232 S.W.3d 385, 391 (Tex. App.--Dallas 2007, no pet.)
(rejecting appellants' arguments that expert report was conclusory because reasoned basis for
opinion was provided; report included statement that "Since [patient] survived until 5:00 p.m. on
May 15th with totally inadequate care (no antibiotics, too little oxygen, too little fluids, no
medications to maintain blood pressure and no monitoring for acidosis) if he had been transferred
to Terrel[l] Medical Center and given the proper support within twenty-four [hours] of the onset of
symptoms, it is my opinion that his chances of survival were greater than 50%.") (citing Burrow
v. Arce, 997 S.W.2d 229, 236 (Tex. 1999) (opinion with reasoned basis not conclusory)).