

## NUMBER 13-17-00247-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

DINA CAVAZOS,      Appellant,

v.

STRYKER SALES CORPORATION,      Appellee.

### On appeal from the 117th District Court of Nueces County, Texas.

## DISSENTING MEMORANDUM OPINION

### Before Justices Contreras, Longoria, and Hinojosa
### Dissenting Memorandum Opinion by Justice Hinojosa

Appellee Stryker Sales Corporation (Stryker) moved for no-evidence and traditional summary judgment on appellant Dina Cavazos's claims of negligence and assault by Colby Sample, a Stryker employee, and her accompanying request for personal injuries damages allegedly caused by Sample's conduct. Stryker's summary judgment motions contend that, among other things, Cavazos had no evidence that

Sample's conduct caused her alleged injuries (a no-evidence ground) and that she lacked competent expert testimony regarding causation (a traditional ground). Cavazos responded to Stryker's causation grounds by directing the trial court to excerpts of the deposition testimony of Jon F. Manjarris, M.D., an orthopedic surgeon who treated Cavazos before and after her incident with Sample. In two separate filings—a reply and motion to exclude—Stryker urged the trial court to exclude Manjarris's opinions. The trial court granted both of Stryker's summary judgment motions—and a supplemental described below—without specifying a basis, and it later rendered a take-nothing final judgment in favor of appellee Stryker.

In one issue, Cavazos contends that the trial court erred in granting Stryker's summary judgment motions. The majority concludes that, among other things, Manjarris's opinions constitute competent expert testimony that Sample's conduct caused Cavazos's alleged injuries. It, therefore, concludes that Cavazos presented more than a scintilla of evidence in response to Stryker's causation grounds. I, however, conclude Manjarris's opinions are legally insufficient, would overrule Cavazos's sole issue without addressing the other summary judgment grounds because Cavazos's failure to present legally sufficient evidence regarding causation is dispositive, and would affirm the final judgment rendered by the trial court. Therefore, I respectfully dissent.

## I. BACKGROUND

Cavazos was an operating room nurse at Corpus Christi Medical Center, Doctors Regional Hospital (the hospital). Sample sells interventional spine equipment for Stryker and attends surgeries performed at the hospital where Stryker products are used.

2

During surgery, Sample would bring products, supply products, or ensure that products were being used correctly. Through her job, Cavazos became professional acquaintances with both Manjarris and Sample.

## A. Pre-Incident

On one occasion in a hospital hallway, Cavazos complained to Manjarris that her knee "was aching a little bit and she didn't know what it was." Manjarris examined Cavazos's knee and recommended that she obtain a magnetic resonance imaging (MRI) scan. The April 8, 2011 radiologist report on the MRI scan noted the following impressions:

(1) Small popliteal fossa Baker's cyst with no evidence of surrounding edema signal intensity seen to suggest Baker's cyst rupture.

(2) Lateral discoid meniscus with no evidence of meniscal tear.

(3) Mild chondromalacia of the medial femoral and tibial plateau articular cartilage. No evidence of internal derangement of the knee is seen.

Manjarris reviewed the April 8, 2011 radiologist report but not the actual images. He advised Cavazos that if her knee continued to hurt, she should have surgery. However, Manjarris recalled that Cavazos did not seek further treatment from him and that she instead opted for "massage therapy or maybe some type of chiropractic manipulation or something and her knee got better." In 2012, Manjarris participated on a relay marathon team organized by and with Cavazos.

## B. Incident

On Friday, April 19, 2013, Cavazos and Sample were working in the same operating room. Both described an incident between them very differently.

3

According to Cavazos's deposition testimony, Sample "kick[ed]" her in the back of the knee. After it happened, Cavazos felt a "pop" and her knee "buckle[d]," so she grabbed on to the computer in front of her and sat down on a stool. Cavazos stated that, at that point, she could not straighten her leg or put any weight on it, so she called for her supervisor to relieve her. She then "limp[ed]" to the emergency department. Cavazos stated the "kick" caused her knee to swell "right away"; it caused a bruise to form the next day; and it caused her to need crutches through the summer of 2013.

According to Sample's deposition testimony, he was walking into the operating room holding supplies in one hand and lead aprons in the other hand, while Cavazos was standing and working at a computer. Sample stated he wanted to get Cavazos's attention because he needed a Telfa pad, so he "tapped [Cavazos] in the back of her leg" with the end of his foot. He stated "it was a very gentle tap." At that point, Cavazos grabbed her leg and complained of knee pain. She then told Sample that she had "knee issues" and showed him that the front of her knee was swollen and bruised. Sample testified:

> And I immediately said, "I did not do that."
>
> She replied back, "No, you didn't. I had hurt my knee playing softball a couple of weeks earlier. I knew I wasn't supposed to. . . . I've had knee problems in the past, and the doctor told me not to play, but I went ahead and did. And then a couple days prior to this, I bumped my knee into a patient bed, and that's why I had the bruise."

According to Sample, when he later visited Cavazos in the emergency department, Cavazos told him: "Don't worry about it. I'm fine. It's not your fault."

4

## C.     Post-Incident

On Tuesday, April 23, 2013, Manjarris evaluated Cavazos for left knee pain in his clinic.   Manjarris ordered a second MRI scan of Cavazos's left knee.   The April 24, 2013 radiologist report on the MRI scan noted the following impressions:

(1)     Partial tear of the lateral collateral ligament which appears to be chronic since there is no associated edema soft tissue signal intensity.

(2)     Posterior horn medial meniscal degeneration with no evidence of tear.

(3)     Lateral discoid meniscus with no evidence of tear.

(4)     Tiny popliteal fossa Baker's cyst.

On May 1, 2013, Manjarris performed arthroscopic surgery on Cavazos's left knee based on the April 24, 2013 radiologist report and Cavazos's complaint of pain. Manjarris's May 1, 2013 post-operative report notes that he visualized "an osteochondral lesion, approximately [the] size of a nickel on the medial femoral condyle with articular cartilage flap in and out of the joint" and performed a surgical procedure to repair it. Manjarris also visualized a "discoid lateral meniscus" and performed a surgical procedure to repair it.

## D.     Lawsuit

On February 24, 2014, Cavazos sued "Stryker Corporate" and Sample, alleging that Sample acted negligently or alternatively that he assaulted her.   Sample was never served with citation.   In subsequent petitions, Cavazos omitted Sample but substituted the correct Stryker entity for "Stryker Corporate."   The last scheduling order signed by

the trial court set August 29, 2016 as the deadline to file amended pleadings.

### 1.    Stryker's Summary Judgment Motions

On September 1, 2016, Stryker filed two separate motions for summary judgment—one advancing no-evidence grounds and another advancing traditional grounds.[1]   In its no-evidence motion, Stryker asserted that Cavazos had no evidence that, among other things, Sample's conduct proximately caused her alleged injuries.

To its traditional motion for summary judgment, Stryker attached, among other things:  (1) the April 8, 2011 radiologist report; (2) the April 24, 2013 radiologist report; (3) Manjarris's May 1, 2013 post-operative report; and (4) excerpts from Manjarris's deposition.   In Stryker's traditional motion for summary judgment, it asserted that Cavazos could not establish causation as a matter of law.   Stryker directed the trial court to Manjarris's May 1, 2013 post-operative report and highlighted that only Cavazos's osteochondral lesion and discoid meniscus required surgical intervention.   Stryker posited that both conditions pre-dated Cavazos's April 19, 2013 incident with Sample. First, it referenced Manjarris's deposition testimony wherein he equated the "mild chondromalacia of the medial femoral and tibial plateau articular" noted in the April 8, 2011 radiologist report with the osteochondral lesion noted in his May 1, 2013 post-operative report.   Specifically, Manjarris testified to the following:

STRYKER:    The last—or the third observation that you have is this osteochondral lesion of the medial femoral condyle.

MANJARRIS:  Yes.

STRYKER:    I think it's described in another record as medial femoral

---

[1] Both motions in the record before us are prefaced as "amended."

condyle chondromalacia?

MANJARRIS: Yes.

STRYKER: Is that—that's this deteriora—deterioration of the cartilage on the inside top part of the knee; is that right?

MANJARRIS: Yes. It would be right here (indicating.)

STRYKER: Okay. And—and the medial femoral tells us that's the location?

MANJARRIS: Yes.

STRYKER: And—and chondromalacia or—or this osteochondral lesion is the cartilage injury?

MANJARRIS: Yes.

STRYKER: And this is sometimes called runner's knee, right?

CAVAZOS: Objection; form, objection; leading.

MANJARRIS: Sometimes.

STRYKER: And if you go back to the 2011 radiology report, I believe it was, maybe, Exhibit 1.

MANJARRIS: Might be one.

STRYKER: It's right—

STRYKER: That's it? It's actually Exhibit 3.

STRYKER: Thank you.

MANJARRIS: And it was exam date 4/7/2011.

STRYKER: And is it noted in there that Ms. Cavazos had chondromalacia of the medial femoral articular cartilage?

MANJARRIS: Yes.

7

STRYKER: And this was in 2011, correct?

MANJARRIS: Right. It says, "Mild chondromalacia, medial femoral and tibial plateau articular cartilage."

Second, Stryker referenced Manjarris's deposition testimony wherein he testified that Cavazos's discoid lateral meniscus is a congenital condition. Lastly, Stryker asserted that Manjarris could not reliably opine as to whether Cavazos's injuries were chronic or acute and that when he opined that Cavazos's injuries were caused by an acute injury he could not reliably link them to Sample's conduct. According to Stryker, Manjarris's causation opinions spoke to possibility as opposed to a reasonable degree of medical probability.

### 2. Cavazos's Summary Judgment Response

On September 15, 2016, Cavazos filed a joint response to Stryker's no-evidence and traditional motions for summary judgment. Cavazos attached to her response her, Sample's, and Manjarris's deposition testimony in their entirety. Cavazos made three responsive arguments regarding Stryker's causation grounds.

First, Cavazos argued that the April 24, 2013 radiologist report noted a partial tear of her lateral collateral ligament and a lateral discoid meniscus, which to the best of Manjarris's knowledge, was caused by Sample's kick to the back of her knee. Specifically, Cavazos referenced the following:

CAVAZOS: Doctor, I'm going to hand you what I've marked as Exhibit 4, if you want to look at that and tell us what you recognize that document to be.

MANJARRIS: Um-hum. Yeah, I saw her on 4/23. Well, the next day she got an MRI scan on 4/24/2013 of her left knee and it—the

8

impression is that she has a partial tear of the lateral collateral ligament, it says here which appears to be chronic, since there's no soft tissue edema and she also has a posterior horn medial meniscal degeneration with no evidence of tear and she had a lateral discoid meniscus. And again, a tiny popliteal fossa baker's cyst.

CAVAZOS: And you just read from the impor—excuse me, the impression section of the MRI; is that correct?

MANJARRIS: Yes.

CAVAZOS: On Exhibit 4?

MANJARRIS: (Nodding head.)

STRYKER: Or—excuse me, what did I mark that as, I'm sorry, I'm getting—

MANJARRIS: 4.

STRYKER: It should be Exhibit 5.

MANJARRIS: Should be Exhibit 5.

STRYKER: I made it Exhibit 4. My apologies.

(Exhibit No. 5 was marked.)

CAVAZOS: In Exhibit 5, that April 24th, 2013 MRI you just read from the impression section, can you tell us—you'd first said that she had a partial tear of the col—lateral collateral ligament?

MANJARRIS: Um-hum.

CAVAZOS: Can you tell us what that is?

MANJARRIS: Yeah, this is, again, the knee and the lateral collateral ligament is the ligament that attaches from the femur to the fibula. So it's also called the fibular collateral ligament and this is it (indicating). And it's right next to where—let me move the kneecap out of the way—it's right next to where the lateral meniscus is, which is what she already had, a discoid

9

> lateral meniscus, but in her previous MRI, she didn't have a tear or—or lateral collateral ligament.

CAVAZOS: And do you have an opinion as to how she received that lateral collateral ligament tear?

STRYKER: Objection; form.

CAVAZOS: What's your basis?

STRYKER: Lack of foundation, calls for speculation, improper retained expert testimony.

CAVAZOS: Do you have an opinion as to how she received that lateral collateral—collateral ligament tear?

STRYKER: Same objection.

CAVAZOS: You can answer the question.

MANJARRIS: Oh, she told me she was kicked in the knee and her knee gaveout and that's—I assume that's how it happened.

Second, Cavazos argued that in Manjarris's opinion, the fact that she had a medial femoral condyle injury and a sprained lateral collateral ligament in addition to her discoid lateral meniscus, corroborated Cavazos's account of Sample's conduct. Specifically, Cavazos referenced the following:

CAVAZOS: Okay. And in your practice, are you ever called upon to separate out those who were hurt from those who were not hurt?

MANJARRIS: Yes.

CAVAZOS: And can you describe that process?

STRYKER: Objection; form.

MANJARRIS: Generally, we do a physical examination, ask them what occurred and we get objective studies, like x-rays and MRI

10

scans, and then, we—if it's—if we have objective findings and the objective and subjective findings correlate, we'll proceed with surgery.

CAVAZOS: And did you ever form a—or did you ever form an opinion as to whether Dina Cavazos was actually suffering from a traumatic injury?

STRYKER: Objection; form.

MANJARRIS: Yes.

CAVAZOS: And what was that opinion?

MANJARRIS: I thought she had a[n] injury. That's why we did an arthroscopy.

CAVAZOS: And what was the basis of that opinion?

MANJARRIS: I thought that, subjectively, she was complaining of a lot of pain and objectively, we had a—a discoid lateral meniscus and a—a sprained lateral collateral ligament and I thought that her—I, initially, thought it was just her discoid lateral meniscus. I did not expect to find the medial femoral condyle injury that she had. But we don't always find exactly what you're looking for. Sometimes you find more there, you know, and she had—she had more than I thought I—I was hoping she would just have the discoid lateral meniscus injury, which is congenital and it's not really—if she had just had that, I would say that none of this made a difference, being kicked or anything, but with that medial femoral condyle injury and the sprained lateral collateral ligament, that correlates with what she described what happened.

STRYKER: Objection to the nonresponsive portion of that response.

Third, Cavazos argued that in Manjarris's opinion Sample's kick to Cavazos's knee is what ultimately led to the need for surgical treatment. Specifically, Cavazos referenced the following:

CAVAZOS: And do you have an opinion as to—to whether the—the kick

11

to her knee that—that Dina Cavazos had initially reported to you, do you have an opinion if that was the producing cause of her left knee condition that required the surgery on August 21st, 2013?

STRYKER:    Objection; form.

MANJARRIS:    I think they're all related, yes. She told me that's how she—her knee was hurt and then, the fir—the—they're—both surgeries are related to each other.

**3.    Stryker's Motion to Exclude, Cavazos's Fifth Amended Petition, and Stryker's Summary Judgment Reply**

On September 19, 2016, Stryker filed a motion to exclude Manjarris's causation opinions. As with its traditional motion for summary judgment, Stryker attached, among other things: (1) the April 8, 2011 radiologist report; (2) the April 24, 2013 radiologist report; (3) Manjarris's May 1, 2013 post-operative report; and (4) excerpts from Manjarris's deposition. Stryker argued that Manjarris's causation opinions were conclusory and speculative and that they were unreliable because they were not grounded in the methods and procedures of science and fail to exclude alternate causes. Stryker prayed that Manjarris's causation opinions be struck from Cavazos's summary judgment response.

On September 20, 2016, approximately twenty-two days after the governing scheduling order's pleading deadline, Cavazos filed her fifth amended petition. This is the only petition that appears in the record. In it, Cavazos pleaded, among other things, the following:

Plaintiff would show that if she were suffering from any disease or condition existing prior to the occurrence in question, such disease or condition was dormant and/or unknown to Plaintiff and/or not causing any pain or

12

disability, and/or that the occurrence in question has incited, accelerated and aggravated such conditions to such an extent that they have now become painful and disabling as described herein.

On September 21, 2016, Stryker filed a single reply in support of both its no-evidence and traditional motions for summary judgment. In its reply, Stryker argued that Cavazos's response did not dispute that expert testimony is required to establish the cause for Cavazos's alleged injuries. Stryker posited that Manjarris's causation opinions were legally insufficient and that Cavazos failed to rebut its argument that Manjarris did not provide a causation opinion that was within a reasonable degree of medical probability. Stryker criticized Cavazos's defense of Manjarris's opinions as merely arguing that he may rely upon Cavazos's statements in reaching them. Lastly, Stryker argued that evidence of temporal proximity alone is not legally sufficient evidence of causation.

### 4. Hearing on Stryker's Summary Judgment Motions and Motion to Exclude

On September 22, 2016, the trial court held a hearing on Stryker's summary judgment motions and took them under advisement. The trial court asked for supplemental briefing regarding a non-causation ground.[2] At the same hearing, the trial court also considered Stryker's motion to exclude Manjarris's causation opinions.

### 5. Stryker's Supplemental Summary Judgment Motion

On November 15, 2016, Stryker filed a supplemental motion for summary judgment regarding limitations. In it, Stryker: (1) contended that because Sample was

---

[2] The non-causation ground related to Stryker's contention that it could not be held liable for Sample's alleged assault because it is an intentional tort.

not served prior to the expiration of the statute of limitations, Cavazos's derivative claims against Stryker were also barred by the statute of limitations; and (2) stated that "to avoid waiving any arguments set forth in its previous Motions, Stryker incorporates its Amended Traditional and Amended No-Evidence Motions for Summary Judgment as if set forth fully herein." Although Stryker's reply in support of its supplemental motion for summary judgment is in the record, Cavazos's response it not.

### 6. Summary Judgment Order, Final Judgment, and Cavazos's Motion for New Trial

On December 27, 2016, the trial court signed an order granting Stryker's motions for summary judgment without specifying a basis.[3] On January 30, 2017, the trial court signed a final judgment dismissing Cavazos's claims with prejudice. Cavazos filed a motion for new trial. In addition to asserting that Cavazos had presented summary judgment evidence that created an issue of material fact, Cavazos argued:

> The defendant's summary judgment was brought in furtherance of the defenses raised under in their pleadings by which Cavazos was not given adequate ability to reply through no fault of her own. Cavazos urges the court to reconsider the summary judgment and argue that a denial of their summary judgment would violate her rights under Texas Law.

This appeal followed.

## II. DISCUSSION

### A. Standard of Review

We review a trial court's grant of summary judgment de novo. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013). In *Neely*, the movant filed a hybrid motion for summary

---

[3] Notably, the summary judgment order does not provide when Stryker's summary judgment motions were considered

judgment.  *Id.*  In this case, Stryker filed separate motions for summary judgment.  The majority misses this distinction.  When both a no-evidence and traditional motion for summary judgment are filed, we typically analyze the validity of the no-evidence motion before reviewing the traditional motion.  *See Ford Motor Co., v. Ridgeway*, 135 S.W.3d 598, 600 (Tex. 2004) ("If the plaintiffs fail to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether [the non-movant's] proof satisfied the Rule 166a(c) burden.").

A motion for no-evidence summary judgment is equivalent to a motion for pretrial directed verdict, and we apply the same legal sufficiency standard of review.  *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 772 (Tex. App.—Corpus Christi 2003, no pet.) (op. on reh'g).  Such a motion should be granted if there is no evidence of at least one essential element of the claimant's cause of action.  *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam).  The burden of producing evidence is entirely on the non-movant; the movant has no burden to attach any evidence to the motion, and if the non-movant produces evidence raising a genuine issue of material fact, summary judgment is improper.  TEX. R. CIV. P. 166a(i).  All that is required of the non-movant is to produce a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element. *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003); *Ortega*, 97 S.W.3d at 772.

**B.    Applicable Law**

Causation is an essential element of Cavazos's negligence and assault claims.

15

TEX. PENAL CODE ANN. § 22.01(a)(1), (3) (West, Westlaw through 2017 C.S.) (stating that causation is an element of assault); *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (stating that causation is an element of negligence).

The majority assumes without deciding that expert testimony is required to establish causation in this case. But, in the trial court, Cavazos never argued otherwise. Thus, she cannot seek reversal on that ground. *See* TEX. R. CIV. P. 166a(c); TEX. R. APP. P. 33.1(a). Moreover and to the contrary, Cavazos's summary judgment response references several portions of Manjarris's deposition testimony. Even if Cavazos posited that she did not need expert testimony to establish causation, such a contention would be futile under Cavazos's allegations and established precedent. In *Guevara v. Ferrer*, the Texas Supreme Court wrote:

> Undoubtedly, the causal connection between some events and conditions of a basic nature (and treatment for such conditions) are within a layperson's general experience and common sense. This conclusion accords with human experience, our prior cases, and the law in other states where courts have held that causation as to certain types of pain, bone fractures, and similar basic conditions following an automobile collision can be within the common experience of lay jurors. Thus, non-expert evidence alone is sufficient to support a finding of causation in limited circumstances where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence.

247 S.W.3d 662, 668 (Tex. 2007) (citations omitted). Cavazos's pleaded allegation that she had a "dormant" disease or pre-existing condition is not the type of basic condition following Sample's conduct that would be within the common experience of lay jurors. *See id.*

16

The causal connection between a defendant's negligence and a plaintiff's injuries cannot be based on mere conjecture, speculation, or possibility. *See Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995). To constitute evidence of causation, a medical expert's opinion must rest in reasonable medical probability. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 500 (Tex. 1995). In other words, "the ultimate standard of proof on the causation issue 'is whether, by a preponderance of the evidence, the negligent act or omission is shown to be a substantial factor in bringing about the harm and without which the harm would not have occurred.'" *Id.* (quoting *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 400 (Tex. 1993)). Accordingly, a plaintiff cannot show that a defendant's negligence was more likely than not a cause of injury "where the defendant's negligence deprived the tort victim of only a 50% or less chance of avoiding the ultimate harm." *Kramer*, 858 S.W.2d at 400.

Importantly, when the evidence demonstrates that "there are other plausible causes of the injury or condition that could be negated, the plaintiff must offer evidence excluding those causes with reasonable certainty." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997); *see also Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010) ("When the only evidence of a vital fact is circumstantial, the expert cannot merely draw possible inferences from the evidence and state that 'in medical probability' the injury was caused by the defendant's negligence. The expert must explain why the inferences drawn are medically preferable to competing inferences that are equally consistent with the known facts.").

17

## C.     Causation Analysis

### 1.     Cavazos's Response to Stryker's No-Evidence Motion for Summary Judgment

Manjarris's deposition testimony referenced by Cavazos in response to Stryker's no-evidence motion for summary judgment regarding the causation element is legally insufficient.

First, regarding the lateral collateral ligament tear that appears in the April 24, 2013 radiologist report but not the April 8, 2011 radiologist report, Manjarris testified that Cavazos "told me she was kicked in the knee and her knee gave out and that's—I assume that's how it happened."   This statement is nothing more than conjecture, speculation, or possibility.   *See Park Place Hosp.*, 909 S.W.2d at 511.

Second, Manjarris's testimony that Cavazos's "medial femoral condyle injury and the sprained lateral collateral ligament . . . correlates with what she described what happened" fails to exclude a chronic condition as a plausible cause.   *See Havner*, 953 S.W.2d at 720; *see also Jelinek*, 328 S.W.3d at 536.   Manjarris did not testify that he personally observed the sprained lateral collateral ligament.   Instead, as evident from his deposition testimony, he was relying on the April 24, 2013 radiologist report.   But, the entire first impression from that report provides, "Partial tear of the lateral collateral ligament which appears to be chronic since there is no associated edema soft tissue signal intensity."   At a minimum, Manjarris fails to explain why the radiologist classified the partial tear of the lateral collateral ligament as "chronic" if it was caused by Sample's

conduct just four days before the MRI scan.

Third, Manjarris's testimony that "I think they're all related, yes. She told me that's how she—her knee was hurt and then, the fir—the—they're—both surgeries are related to each other" is nothing more than conjecture, speculation, or possibility. *See Park Place Hosp.*, 909 S.W.2d at 511.

Viewing Manjarris's testimony referenced by Cavazos in her summary judgment response in the light most favorable to her, I conclude that there was no more than a scintilla of evidence to support the causation elements of her negligence and assault claims. *See City of Keller*, 168 S.W.3d at 824.

## 2. Concerns with the Majority's Causation Analysis

The majority faults my legal sufficiency analysis for failing to "identify any specific alternative 'plausible cause' which was supported by the summary judgment evidence and which could have generated the new injuries specified in the April 2013 MRI report." *See ante*, p. ___.

In Cavazos's response, she does not reference competent evidence that her pre-existing or degenerative conditions constituted "other plausible causes of the injury that could [not] be negated." *Cf. Havner*, 953 S.W.2d at 720. Because Cavazos failed to reference any competent evidence that would employ the *Havner* exception, I conclude that the trial court did not err in granting Stryker's no-evidence motion for summary judgment. The majority points to the April 23, 2013 MRI report's impressions wherein a "[p]atrial tear of the lateral collateral ligament" and "[p]ost horn medial meniscal degeneration" are noted as evidence that Cavazos was diagnosed with "additional

19

conditions" in 2013. Cavazos did not attach the April 23, 2013 MRI report to her summary judgment response. The excerpt from Manjarris's deposition relating to the "[p]atrial tear of the lateral collateral ligament" that Cavazos references in her summary judgment response provides:

CAVAZOS: Do you have an opinion as to how she received that lateral collateral—collateral ligament tear?

STRYKER: Same objection. [Lack of foundation, calls for speculation, improper retained expert testimony.]

CAVAZOS: You can answer the question.

MANJARRIS: Oh, she told me she was kicked in the knee and her knee gave out and that's—I assume that's how it happened.

Although not relevant to my no-evidence review, I note that the April 23, 2013 MRI report, generated approximately four days after Cavazos's incident with Sample, goes on to provide that the partial tear of the lateral collateral ligament "appears to be chronic since there is no associated edema soft tissue signal intensity." The majority fails to explain how this "chronic" condition is not "any specific alternative 'plausible cause.'"[4]

In essence, the majority assumes Cavazos's naked contention that she suffered from pre-existing or degenerative conditions satisfies the *Havner* exception, and in reviewing Stryker's no-evidence motion for summary judgment on causation it effectively holds Stryker responsible for conclusively negating that Cavazos's pre-existing or degenerative conditions were not "other plausible causes of the injury."

The majority references *LMC Complete Auto., Inc. v. Burke*, 229 S.W.3d 469, 479

---

[4] I also note that Manjarris testified that Cavazos's discoid lateral meniscus is a congenital condition.

(Tex. App.—Houston [1st Dist.] 2007, pet. denied), for the proposition that "though expert testimony may be required to prove complex medical causation issues, such testimony is not required to establish a sequence of events and subjective experiences such as those recounted by Cavazos." But, the plaintiff in *Burke* testified that he never experienced back pain before the accident that allegedly necessitated two back surgeries, *id*., whereas Cavazos does not dispute her pre-existing conditions. Thus, the majority's reliance on *Burke* is misplaced.

The majority also references *Onwuteaka v. Gill*, 908 S.W.2d 276, 283 (Tex. App.—Houston [1st Dist.] 1995, no writ), for the proposition that although "an expert opinion regarding causation that is based completely upon speculation and surmise amounts to no evidence," "[t]he weakness of facts in support of an expert's opinion generally go[es] to the weight of the testimony rather than its admissibility." However, the reliability inquiry here does not depend on Cavazos's credibility as to her medical history. Instead, our focus should be on Manjarris's failure to provide a reliable explanation for the basis of his causation opinion. *See Wilson v. Shanti*, 333 S.W.3d 909, 915 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Thus, *Onwuteaka* does not support the majority's implicit proposition that Manjarris may parrot Cavazos's statements in order to satisfy an expert witness requirement.

## D.     Concerns with the Majority's Avoidance of Stryker's Limitations Ground

I have endeavored to engage in the merits of Cavazos's sole issue, and I conclude that the lack of legally sufficient evidence regarding causation is dispositive. In closing, I note that the majority ignores two fundamental rules of procedure in order to avoid the

21

merits of Stryker's limitations ground and summarily conclude that the trial court erred in granting summary judgment on it.

### 1. State of the Pleadings

The majority concludes that Cavazos's fifth amended petition was her live petition and that Stryker's answer to it was not filed. The majority reaches this conclusion by stating that "Stryker concedes on appeal" that Cavazos's fifth amended petition is her live petition. It then scours the record to find no order granting Stryker leave to mark its answer as filed. The majority errs by torturing Stryker's brief. In its brief, Stryker argues:

> Ms. Cavazos filed suit on February 24, 2014 against Stryker Corporation and Mr. Sample for injuries that she allegedly experienced when Mr. Sample touched her leg on April 19, 2013. Ms. Cavazos served Stryker Corporation in March 2014, but she never served Mr. Sample. Ms. Cavazos does not dispute that the statute of limitations expired for her personal injury claims against Mr. Sample on April 19, 2015. *See* Tex. Civ. Prac. & Rem. Code § 16.003 (the statute of limitations for personal injury claims is two years); *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990) ("To 'bring suit' within the twoyear limitations period prescribed by section 16.003, a plaintiff must not only file suit within the applicable limitations period, but must also use diligence to have the defendant served with process."). **As a result, Ms. Cavazos's live pleading—her Fifth Amended Petition—only asserted claims against Stryker Sales Corporation.**

(record references omitted; emphasis added). But Stryker's also argues:

> [] Stryker's live answer asserts a statute-of-limitations defense.
> Ms. Cavazos next argues that Stryker was required to affirmatively plead a statute-of-limitations defense, and that its failure to do so resulted in waiver of the defense. But Ms. Cavazos is simply misrepresenting the facts. Stryker did assert a statute-of-limitations defense, and as a result, Ms. Cavazos's argument necessarily fails.

(footnote and record reference omitted). Reading all of Stryker's brief, I do not see its

22

single statement as a "concession." Stryker's appellate argument assumes that Cavazos's fifth amended petition, together with its answer thereto, were the live pleadings. Indeed, Stryker's assumption is rooted in its trial court filings.[5]

The majority also errs by excusing Cavazos from her burden as the appellant to see that a sufficient record is presented to show error requiring reversal. *See Christiansen v. Prezelski*, 782 S.W.2d 842, 842 (Tex. 1990) (per curiam). To be clear, the record contains no docket-control order, order setting any of Stryker's summary judgment motions for hearing or submission, nor a docket sheet. *But see*, TEX. R. APP. P. 34.5(a)(3) (providing that unless the parties designate the filing in the appellate record by agreement under Rule 34.2, the record must include, among other things, the court's docket sheet). Nor does it contain an order granting Cavazos leave to mark her fifth amended petition as filed—a point the majority does not contest. Under *Christiansen*,

---

[5] In Stryker's September 28, 2016 motion for leave to file its answer to Cavazos's fifth amended petition, it alleges:

> Plaintiff filed her Third Amended Petition on August 29, 2016, in which she substituted Stryker Sales Corporation as a defendant for Stryker Corporation. Plaintiff filed her Fourth and Fifth Amended Petitions three weeks after the current pleading deadline on September 19, 2016 and September 20, 2016, respectively. Stryker Sales Corporation has not yet filed an answer to Plaintiff's live pleading, which was filed eight days ago.

> During an oral hearing on September 22, 2016, the Court continued the October 10 trial date to November 14, 2016 and ordered that the parties submit supplemental briefing regarding whether Plaintiff may proceed on her negligence and assault claims through the doctrine of respondeat superior without the presence of the alleged tortfeasor-employee as a defendant.

> While Stryker is not aware of any authority requiring it to affirmatively plead a defense of Colby Sample, who is not a party to this suit, in an abundance of caution Stryker seeks to amend its answer to make clear that Colby Sample's statute of limitations defense bars any recovery in this case. Stryker's First Amended Answer is attached hereto as Exhibit A.

23

the majority should not use Stryker's motion for leave and the absence of an order granting it—points Cavazos never makes—to give Cavazos a concession. *See* 782 S.W.2d at 842. Instead, under *Christiansen*, it should be asking where is Cavazos's motion for leave to mark her fifth amended petition as filed. *See id.*

### 2. Lack of Cavazos's Response to Stryker's Supplemental Motion for Summary Judgment

The majority's first oversight relates to its second. The record before us lacks Cavazos's response to Stryker's supplemental motion for summary judgment regarding its limitations defense. We know Cavazos's response is missing because Stryker's December 6, 2016 reply in support of its supplemental motion assails it.

In *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 493–94 (Tex. 1991), the trial court granted summary judgment on the affirmative defense of no consideration, which was included in the grounds of the motion for summary judgment, but was not alleged in the answer. The supreme court held a trial court can grant summary judgment on an unpleaded affirmative defense if: (1) the motion for summary judgment requested judgment on that ground; and (2) the opposing party does not object to the absence of a pleading, implying the parties tried the issue by consent. *Id.* at 494–95. Under *Roark*, it was Cavazos's burden to object to the trial court considering an unpleaded defense. Thus, even if Stryker had failed to file an answer containing a limitations defense, it was incumbent on Cavazos to object to such a summary judgment ground. In Cavazos's motion for new trial, she complains that Stryker's "summary judgment was brought in furtherance of the defenses raised under in their pleadings by which Cavazos was not

24

given adequate ability to reply through no fault of her own." Although Cavazos's new-trial motion does not define Stryker's defenses, her statement suggests that she viewed Stryker's "defenses" as included in a filed pleading.

The majority characterizes my application of the rule in *Roark* as a trial by consent. It then references three opinions dealing with bench trials for the proposition that trial by consent is intended to cover only the "exceptional" case in which it "clearly appears from the record as a whole that the parties tried the unpleaded issue"; it "should be applied with care" and "is not intended to establish a general rule of practice." *See Guillory v. Boykins*, 442 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *In re A.B.H.*, 266 S.W.3d 596, 600 (Tex. App.—Fort Worth 2008, no pet.); *Greene v. Young*, 174 S.W.3d 291, 301 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). In *Roark*, the Texas Supreme Court wrote:

> Moreover, under our rules, unpleaded claims or defenses that are tried by express or implied consent of the parties are treated as if they had been raised by the pleadings. The party who allows an issue to be tried by consent and who fails to raise the lack of a pleading before submission of the case cannot later raise the pleading deficiency for the first time on appeal. There is no valid reason why these rules should not apply to issues raised in the motion for summary judgment. If the non-movant does not object to a variance between the motion for summary judgment and the movant's pleadings, it would advance no compelling interest of the parties or of our legal system to reverse a summary judgment simply because of a pleading defect.

*Roark*, 813 S.W.2d at 495 (citations omitted).

True, the court in *Roark* looked to common law principles regarding trial by consent in reaching its holding. But, in doing so it incorporated those principles into a common law rule of civil procedure governing summary judgments. Against this backdrop is the

25

well understood rule that "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." *See* Tex. R. Civ. P. 166a(c). In this case, the majority swaps the rule articulated in *Roark* for the "exceptional" consideration articulated in the common law regarding bench trials. Thus, the majority's reliance on the complaints of surprise from Cavazos's counsel at the November 8, 2016 status conference is unavailing because those complaints are not found in a written motion, answer or other response. *See* Tex. R. Civ. P. 166a(c).[6]

### III. CONCLUSION

For the foregoing reasons, I would therefore overrule Cavazos's sole issue and affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Delivered and filed the
31st day of August, 2018.

---

[6] Even if Cavazos's response to Stryker's supplemental motion for summary judgment were before us and in it she objected to the trial court's consideration of Stryker's limitations ground, there is authority from a sister court suggesting that the trial court may have implicitly granted leave for Stryker's amended answer to be marked as filed. *See Carlton Transport, Inc. v. Austin Fleet Maintenance, Inc.*, No. 04-02-00449-CV, 2003 WL 22299990, at *1 (Tex. App.—San Antonio Oct. 8, 2003, no pet.) (mem. op.).